The State of Kansas, *on the relation of F. P. Cochran, County Attorney,* v. W. H. Winters *et al.*

Intoxicating Liquors — *Original Packages* — *Sale* — "*Wilson Bill*." Under the decision of the supreme court of the United States in the case of *Leisy v. Hardin*, 135 U. S. 100, an importer of intoxicating liquors into any state from any other state or country, could, by himself or agent, prior to the passage of the "Wilson bill," sell such liquors so long as they remained in the unbroken packages in which they existed during their transportation, without regard to the laws of the state into which such liquors were imported, and without regard to the size of the packages.

*Appeal from Chase District Court.*

The material facts are stated in the opinion, filed December 6, 1890.

*Madden Bros.*, for appellants.

*L. B. Kellogg*, attorney general, for The State.

The opinion of the court was delivered by

Valentine, J.: This is an appeal by the defendant, W. H. Winters, from an order of the judge of the twenty-fifth judicial district, made at chambers in Marion county on July 25, 1889, sentencing the defendant to pay a fine of $100, and to be imprisoned in the county jail of Chase county for the period of thirty days, and to pay costs, for an alleged contempt in violating an order of injunction granted by such judge at chambers in Marion county on July 1, 1890, restraining the defendant from selling intoxicating liquors at Strong City, in Chase county. The injunction was allowed and granted without notice to the defendant upon an *ex parte* application by the county attorney of Chase county, and it reads as follows :

"State of Kansas, County of Chase.—*In the District Court of said County.*—State of Kansas *v.* William H. Winters and Mary O'Byrne.—It being shown to me by verified petition of the plaintiff that the defendant Mary O'Byrne is the owner of the certain frame building standing and being

on lots 6 and 8 in block 6 in Carter's addition to the city of Strong City, Chase county, Kansas, and that she authorizes and knowingly permits the defendant William H. Winters to occupy and use the same for the illegal sale, barter, and gift of intoxicating liquors, and as the resort of persons for the drinking of intoxicating liquors, and that the defendant William H. Winters occupies and uses said premises for all of such illegal purposes, and that neither of said defendants is entitled under the law to sell intoxicating liquors, and that by reason of all such illegal sales and said other illegal practices, the said premises have become and are a common nuisance: It is therefore ordered that the defendants, and each of them, and their agents, clerks, servants and lessees, be enjoined from keeping open, or permitting to be kept open, the said premises for said uses, and from bartering, selling or giving away, or keeping for barter, sale or gift, or permitting to be drunk thereon, any intoxicating liquors, without a permit so to do from the probate judge of the said county of Chase. And it is further ordered that before this order takes effect, that the plaintiff execute a bond to said defendants, conditioned according to law, in the sum of one hundred dollars.

" Witness my hand, at chambers, in Marion, Marion county, Kansas, this July 1, 1890.    FRANK DOSTER,
*Judge of the 25th Judicial District.*"

Afterward, and on July 10, 1890, said judge at chambers in Marion county, upon a letter of the county attorney of Chase county informing him that the defendant was selling intoxicating liquors in Chase county, issued an order to the defendant, Winters, requiring him to show cause before the judge at his chambers in Marion county on July 12, 1890, why he, the defendant, should not be adjudged guilty of contempt in violating the said order of injunction. The defendant made a special appearance before the judge on the day last above mentioned, and moved to discharge the order requiring him to show cause, for various reasons, including a want of jurisdiction on the part of the judge, which motion was overruled. The judge then required the county attorney of Chase county to file a written complaint, which the county attorney did, and the defendant again moved to be discharged for various reasons, which motion was overruled; and the judge

then, over the objections of the defendant, ordered an immediate hearing upon such complaint, without any other or further notice, writ, summons, or process, and the hearing was then had. Upon this hearing the following facts were agreed to by both the parties as constituting "the facts of this case and all the facts therein":

"It is agreed and admitted that the property that was sold by the defendant was the property of the Pabst Brewing Company, a corporation duly and legally incorporated under and by virtue of the laws of the state of Wisconsin; that the only sales, and offers to sell, made by the defendant, were made as agent, duly and legally appointed, for the Pabst Brewing Company; that the only sales, and offers to sell, of liquors were in sealed cases, and as the same were manufactured and put up by the Pabst Brewing Company, of the state of Wisconsin, and were imported by them upon railways from the state of Wisconsin to the state of Kansas, to the defendant, their agent; that no cases or kegs sold, or offered for sale, were broken or opened upon the premises; that as soon as the same was purchased by parties it was removed from the premises; that none of such sales, or offers to sell, were made to minors or persons in the habit of becoming intoxicated, and that none of said liquors so sold, or offered for sale, were drank or used upon the premises; that the defendant is a resident of the United States, and made each and all of the sales he did make as the agent and employé of said Pabst Brewing Company aforesaid, and in no other way; that said defendant, Mary O'Byrne, is the owner of the premises in controversy, and that she has never been served with any injunction in this case; that the defendant, in making the sales that he did make, made the same under the faith and belief that he had a legal right to sell intoxicating liquors, and did not intend by such sales to violate any order of the court, and construed the order of the court to mean a restraint of illegal sales, and not of sales legally made under the law; that all the articles so sold by the defendant were the manufactured articles of intoxicating liquors, made and manufactured by said Pabst Brewing Company, and that each of said cases was substantially made of wood, and each of them contained twenty-four quarts of beer, and each bottle of beer corked and the cork fastened in with a metallic cap, wire-bound and covered with tin-foil, and each case was sealed with a metallic

seal; that the beer in all of the kegs was corked up firmly in wooden kegs, and transported by railway as aforesaid; and that to open said cases the said metallic seals had to be broken, and to open said kegs of beer aforesaid the same had to be broken or bored with an auger; that the only way and manner that the same was sold by the defendant was in said kegs and cases aforesaid; that in the same car in which the cases of beer referred to were shipped, and put up, and loaded on the cars, and received by the defendant, were also single bottles of beer, firmly corked and protected as above stated, and wrapped in paper — as well as pint, half-pint and quart bottles of whisky, wrapped in paper — each constituting a single package by itself, received as such, and sold as such, before and since the injunction was granted, and in no other manner."

The attorney general, in his brief filed in this court, uses the following, among other language:

"The substantial question in this case is whether or not the defendant Winters was protected by the decision of the supreme court of the United States in *Leisy v. Hardin*, 135 U. S. 100, in the sales of single bottles of beer and single-pint, half-pint and quart bottles of whisky, in violation of the prohibitory laws of the state of Kansas, by reason of the fact that such single bottles of beer and whisky were imported into the state of Kansas in the same car in which cases of beer shipped and sold in accordance with the usages of the wholesale liquor trade were imported. These single bottles of beer and whisky were simply wrapped in paper, and thus imported and sold by the defendant Winters under the guise of 'original packages.'

"The sales were made after the decision in the said case of *Leisy v. Hardin*, and prior to the passage of the 'Wilson bill.' The defendant had no druggists' permit, and the sales were not made for medical, scientific or mechanical purposes, under the provisions of the prohibitory law."

We think the attorney general is correct with respect to the question to be considered and decided. It has seldom, if ever, been considered in any civilized country that the same freedom with respect to the traffic in and the use of intoxicating liquors should be allowed as is freely permitted with respect to nearly all the other kinds of property subject to traffic or use.

Intoxicating liquors are never considered as coming within the category of the necessaries of life, nor even as good or wholesome food or drink, or proper articles for general consumption. They are never considered like wheat, or corn, or boots, or shoes, or any of the other harmless articles of traffic or use which need no regulation or restriction. They are considered almost as outlaws. In their unrestricted sale and use they are pernicious, ·deleterious, baneful. They operate as tempters and seducers, alluring people into vice and crime; and constitute a perpetual menace and threat against the peace and quiet and good order and welfare of society. Their proper classification would rather be with such dangerous articles as dynamite, nitro-glycerine, venomous reptiles, dangerous animals, poisons, articles containing the germs of infectious diseases, and "infernal machines," than with any of the harmless or innocuous articles of commerce. Hence in all civilized countries they are considered as the proper subjects of regulation, restriction, and, to some extent, prohibition; and all this has generally been considered as coming within the proper scope of the police power of the several states or governments. In this state the sale and use of intoxicating liquors are regulated, restricted, and, to some extent, prohibited by law; and the supreme court of the United States has held such law to be valid. (*Foster v. Kansas*, 112 U. S. 202; *Mugler v. Kansas*, 123 id. 623.) But in a subsequent case from Iowa that court decided that the liquor laws of the several states will not apply to sales made by the importer or his agent of intoxicating liquors imported from other states or countries, so long as such liquors remain in the unbroken packages in which they existed during their transportation. (*Leisy v. Hardin*, 135 U. S. 100.) This decision was made upon the supposed authority of that provision of the federal constitution which gives to congress the power "to regulate commerce with foreign nations, and among the several states, and with the Indian tribes." (U. S. Const., art. 1, § 8.) This court does not agree with that court upon this question. (*The State v. Fulker*, 43 Kas. 237.) But it is our duty to follow that court, and we shall do so. In the

*Leisy v. Hardin* decision, and in other decisions, the words "original package" are used. These words are not found in the constitution, but still it is thought necessary that we should ascertain what was really meant or intended by their use. Evidently the "original package" referred to in those decisions was and is the package of the importer as it existed at the time of its transportation from one state into the other. The whole subject has relation to commerce and to inter-state commerce, and to nothing else. Hence, the words must mean the package as transported by the importer himself, or by his agent, either a common carrier or a private carrier for the purposes of commerce; and therefore it would seem that it is for the importer to determine how large or how small the package should be, and the manner in which the package should be made up, and the materials used in making it up. Certainly an importer has as much right, under the federal constitution, to import into a state and sell against its laws a single gill of intoxicating liquor as he has to import into such state and sell against its laws a gallon, or a barrel, or a hogshead of the same interdicted article. In some cases of inter-state commerce it would scarcely seem necessary that any package should be used. For instance, in the transportation of live stock the individual articles transported might be horses, cows, sheep, or hogs, and these articles might be very large or very small, even little pigs, and none of them placed in packages. In the present case the liquors transported and sold we suppose were never in any other packages than the ones in which they were sold; hence, these packages must have been "original packages." In the *License Cases*, 5 How. (U. S.) Mr. Justice Catron used the following language:

"To hold that the state license was void, as respects spirits coming in from other states as articles of commerce, would open the door to an almost entire evasion, as the spirits might be introduced in the smallest divisible quantities that the retail trade would require; the consequence of which would be, that the dealers in New Hampshire would sell only spirits produced in other states, and that the products of New Hampshire would find an unrestrained market in the neighboring

states having similar license laws to those of New Hampshire." (Page 608.)

In the same cases Mr. Justice Woodbury used the following language:

"If the proposition was maintainable, that, without any legislation by congress as to the trade between the states, (except that in coasting, as before explained, to prevent smuggling,) anything imported from another state, foreign or domestic, could be sold of right in the package in which it was imported, not subject to any license or internal regulation of a state, then it is obvious that the whole license system may be evaded and nullified, either from abroad or from a neighboring state. And the more especially can it be done from the latter, as imports may be made in bottles of any size, down to half a pint, of spirits or wines; and if its sale cannot be interfered with and regulated, the retail business can be carried on in any small quantity, and by the most irresponsible and unsuitable persons, with perfect impunity." (Pages 625, 626.)

In the case of *Leisy v. Hardin*, 135 U.S. 100, Mr. Justice Gray, in his dissenting opinion, which was concurred in by Justices Harlan and Brewer, used the following language:

" If the statutes of a state, restricting or prohibiting the sale of intoxicating liquors within its territory, are to be held inoperative and void as applied to liquors sent or brought from another state and sold by the importer in what are called original packages, the consequence must be that an inhabitant of any state may, under the pretext of inter-state commerce, and without license or supervision of any public authority, carry or send into, and sell in, any or all of the other states of the union intoxicating liquors of whatever description, in cases or kegs, or even in single bottles or flasks, despite any legislation of those states on the subject, and although his own state should be the only one which had not enacted similar laws." (Pages 159, 160.)

In the case of *In re Beine*, 42 Fed. Rep. 545, Judge Caldwell used the following language:

"A question was raised in the argument as to whether the smallness of some of the packages sold by some of the petitioners did not deprive them of the protection given to vend-

ors of original packages. Single bottles of beer and whisky, packed and sealed or nailed up in boxes made of pasteboard or wood, were shipped and sold in that shape. The boxes containing one bottle were not packed in any other box, but shipped singly and separately as so many distinct and separate packages. It is not perceived why, in the absence of a regulation by congress to the contrary, the importer may not determine for himself the form and size of the packages he puts up for export. The idea that small packages of liquor cannot be treated as original packages, because they are small, springs from the conviction back of it that liquor in any form, or in any sized package, is not a legitimate subject of commerce. That question is put at rest by the decision of the supreme court of the United States, until congress shall act. As long as packages of liquor in any form or size may lawfully be sold by the importer or his agent in a prohibition state, the size of the package is not of much consequence. Whether the package be large or small, the practical effect will be to seriously impair the efficacy of all laws intended to protect society from the evils of the liquor traffic." (Pages 546, 547.)

See also to the same effect, *Collins v. Hills,* 77 Iowa, 181, 183.

We know of no opinion or *dictum* of any court or judge that in the slightest degree conflicts with the foregoing expressions of opinion regarding the size or form of "original packages," and in all probability there is none.

It has also been suggested, but not by the attorney general, that the district judge in this case intended not only to restrain the defendant from making *illegal* sales of intoxicating liquors, but also to restrain him from making *legal* sales thereof. Such a thing can hardly be supposed; but if it should be, still, if a sovereign state through its highest instrumentalities, its legislature, its executive, and its highest courts, has no power or jurisdiction to prevent an importer from selling intoxicating liquors in original packages brought from another state or country, we suppose that a district judge at chambers hardly has such power.

The order and judgment of the judge of the court below will be reversed.

All the Justices concurring.