[No. 10080. Department Two. January 15, 1912.]

THE STATE OF WASHINGTON, *Respondent*, v. AUGUST MAIRE, *Appellant*.[1]

INTOXICATING LIQUORS—LOCAL OPTION—IMPORTATION—"UNBROKEN PACKAGES." A demijohn of whiskey, drawn from a barrel by a wholesale dealer within a wet district, and brought into, and delivered to a customer in, a dry district, is an "unbroken package," within the meaning of the local option law, Rem. & Bal. Code, § 6309, which provides that the act shall not apply to deliveries of unbroken packages at residences which are not places of business or public resort, by wholesalers in their own conveyances or by common carrier.

Appeal from a judgment of the superior court for Snohomish county, Black, J., entered December 1, 1911, upon a trial and conviction of violating the local option law. Reversed.

*E. C. Dailey* (*Hathaway & Alston*, of counsel), for appellant.

*Ralph C. Bell*, for respondent.

MORRIS, J.—Appellant was convicted of a violation of the local option law of 1909, in bringing liquor into a dry unit in quantities less than an unbroken package. The admitted facts are these: Appellant is an employee of a wholesale liquor dealer at Snohomish, a wet unit, of whom a resident of Everett, a dry unit, had ordered a demijohn of intoxicating liquor. This demijohn was filled by the dealer at Snohomish from a larger receptacle then in his store, and when so filled was brought to Everett and delivered to the customer in the same condition in which it left Snohomish. Upon these facts arises the only question in the case: What is an unbroken package, within the meaning of § 18 of that act, Rem. & Bal. Code, § 6309, which provides that the act shall not apply to deliveries of unbroken packages at resi-

[1]Reported in 120 Pac. 87.

dences, which are not places of business or of public resort, by wholesalers in their own conveyances or by any common carrier.

The court below held that the words "unbroken package," should be so construed as to mean the original package as put up by the manufacturer and in which the wholesaler received the liquor, and that only a delivery of such original package within a dry unit came within the exemption of the law. We do not so interpret the law. Without special reference to the cases, it has been generally held that by the words "original package," in cases involving the right to ship intoxicating liquor into a state prohibiting its sale, was meant any form of receptacle that would hold a fixed quantity with reference to safe and convenient transportation; and when so shipped, it was immaterial what the form or size of the package was, as the importer had a right to determine the quantity desired; and so long as this quantity came to him in the unbroken or original package in which it was shipped, however small the package was, it was protected as an original package. In *State ex rel. Cochran v. Winters*, 44 Kan. 723, 25 Pac. 235, 10 L. R. A. 616, it is said:

"The original package was and is the package of the importer as it existed at the time of its transportation from one state into the other."

In *Cook v. Marshall County*, 119 Iowa 384, 93 N. W. 372, 104 Am. St. 283, the court says:

"It relates wholly to goods as prepared for transportation, and has no necessary reference whatever to the package originally prepared or put up by the manufacturer."

A package put up in the usual way employed for transportation by honest dealers, and in a *bona fide* receptacle ordinarily used in shipment and not evidently put up for the purpose of evading the law of a sister state, is regarded as an original package, so long as it remains in the unbroken condition in which it existed during its transportation. 17 Am. & Eng. Ency. Law (2d ed.), 292, 294; 7 Cyc. 429.

Applying the reasoning and principle of these various de-
cisions to the question submitted, the answer is readily de-
termined; and it must be held that an unbroken package is
the package in the original form in which it was made by the
shipper for shipment and delivery into a dry unit, providing
the receptacle used is one ordinarily used by honest dealers
in the same business, and is recognized commercially as such
a receptacle. This means that, if four residents of a dry
unit each ordered a quart of whiskey from a dealer in a wet
unit, such dealer could not send a gallon cask into the dry
unit and deliver a quart to each customer. Neither could a
number of residents of a dry unit join together and order
the dealer in the wet unit to pack a barrel with bottled beer
for convenience of shipment, send it into the dry unit, and
deliver to each customer the number of bottles he desired.
In each of these instances, the liquor would be delivered to
the customer from a broken package which, to our mind, is
plainly what the law intended to prevent. To adopt the view
of the lower court would be to say that the law gives the
citizens in the dry unit the right to use liquor in his private
home. It forbids him procuring the liquor in the dry unit,
except he may accept a delivery of liquor from a wet unit;
provided, if he wishes liquor that is packed by the manu-
facturer in barrels or other large forms of shipment, he may
order and receive nothing less than a barrel, or such other
large receptacle. A quart may be sufficient for his needs,
but he must nevertheless buy the barrel or case to obtain the
quart. Such an interpretation of the legislative intent does
not appeal to us as in the interest of temperance and sobriety,
which was the purpose of the law. It savors rather of the
reverse, and fixes the legislative intent as encouraging the
sale of liquor in large quantities rather than, as we read the
law, permitting the sale in the smallest quantity desired, pro-
vided only the delivery be made in the unbroken package in
which it was shipped.

It follows the appeal is well taken, and the judgment is reversed.

CROW, CHADWICK, and ELLIS, JJ., concur.