[No. 10028.   Department One.   March 11, 1912.]

THE STATE OF WASHINGTON, *Appellant*, v. H. A. ROBINSON, *Respondent*.[1]

INTOXICATING LIQUORS — LOCAL OPTION LAW — APPLICATION — WHOLESALE DEALERS—STATUTES—CONSTRUCTION.   The local option law of 1909 (Rem. & Bal. Code, § 6292 *et seq.*) prohibits sales of intoxicating liquors by wholesalers in dry units, notwithstanding the proviso that wholesalers may deliver unbroken packages at residences in dry units; in view of the restrictions against all sales in any quantity whatsoever in dry units or the taking or soliciting of orders therein, and the often repeated use of the term "sale" whenever and wherever it was intended to permit a sale in a dry unit, which do not include sales by wholesalers, and also the safeguarding of sales by druggists in dry territory, and the general purpose and spirit of the act, all of which require that the proviso be strictly construed to conform to the language of the general provisions; consequently "sales" by wholesalers, whether located within or without the dry unit, must be made outside of the district.

Appeal from a judgment of the superior court for Skagit county, Joiner, J., entered November 27, 1911, dismissing a prosecution for violation of the local option law, upon sustaining a demurrer to the information.   Reversed.

*Augustus Brawley*, for appellant.

*M. P. Hurd*, for respondent.

GOSE, J.—The state prosecutes this appeal from a judgment sustaining a demurrer to the information.   The charging part of the information is as follows:

"That in Skagit county, state of Washington, and on or about the 26th day of October, A. D. 1911, the said defendant, H. A. Robinson, under and by virtue of a wholesale

[1] Reported in 121 Pac. 848.

liquor license issued by the United States government, did unlawfully sell, at the place of business for which said wholesale license was issued, one gallon of intoxicating liquor, to wit, whiskey; to one Charles Colvin, the said defendant H. A. Robinson delivering the said intoxicating liquor at the residence of said Charles Colvin, such place of sale and such place of delivery being within the corporate limits of the city of Mount Vernon, Skagit county, Washington, a city of the third class, and the said city of Mount Vernon being a unit wherein the sale of intoxicating liquor was then and there prohibited, and such sale of intoxicating liquor then and there being prohibited and unlawful, . . ."

The demurrer was sustained upon the ground that the information does not state facts sufficient to constitute a crime or misdemeanor. The appeal presents the question of the interpretation of the local option statute, as applied to a wholesale liquor dealer having a place of business within a dry unit. Laws 1909, page 153 (Rem. & Bal. Code, § 6292 *et seq.*). A correct understanding of the case requires a somewhat extended reference to the statute. The act is entitled:

"An act to provide for the submission to the qualified electors of the question whether the sale of intoxicating liquors shall be licensed or prohibited, providing for the enforcement of the result of the elections hereunder, defining offenses hereunder, and providing penalties therefor."

The applicable parts of the statute are as follows:

"Section 1. For the purpose of an election upon the question of whether the sale of intoxicating liquors shall be permitted as hereinafter provided for, there shall be the following units of territory, . . ."

"Section 2. Within any unit hereinbefore created, a special election may be held upon the question of whether the sale of intoxicating liquor shall be permitted within that unit, . . ."

"Section 3. Any unit hereby created may hold a special election upon the question of whether the sale of intoxicating liquor shall be permitted within the boundaries of such unit, . . ." Rem. & Bal. Code, §§ 6292, 6293, 6294.

Section 5 provides that there shall be printed on the ballot the words, "Shall the sale of intoxicating liquor be licensed within the" described unit; that the ballot shall contain the words: "For license" and "Against license;" that those favoring the licensing of the sale of intoxicating liquor within the unit shall indicate it by a cross within the square following the words "For license," and those desiring to vote against the licensing of the sale of intoxicating liquor within the unit shall make a like mark within the square following the words "Against license." (Rem. & Bal. Code, § 6296).

Section 6, after providing for canvassing the election returns and the certification, publication, and recording of the result of the election, provides: "and no intoxicating liquor, save as hereinafter provided, shall be sold within that unit until permission so to do be granted at an election held for that purpose under the provisions of this act." (Id., § 6297).

Section 9 provides:

"Whenever a majority of the qualified electors voting upon said question in any unit hereinbefore created, at an election held for that purpose, shall have failed to vote 'for license' and it shall thereby have been decided by said vote that intoxicating liquor shall not thereafter be sold within that unit . . . it shall not be lawful to sell, give away or in any manner dispose of intoxicating liquor in any quantity whatever, within the limits of the unit . . ."

saving the right of a person in his private dwelling or private apartments to give liquor to his guests. (Id., § 6300.)

Section 10 (Id., § 6301) provides that, within ten days after the result of the election has become operative, every retail liquor dealer, excepting druggists, shall remove all intoxicating liquor from his place of business, and that a failure to do so shall be *prima facie* evidence that such liquor is kept therein for sale or other disposition in violation of the act. Section 11 (Id., § 6302) provides:

"Whoever shall, either as principal, agent, clerk or servant, directly or indirectly, sell, barter, exchange, give away or otherwise dispose of any intoxicating liquor in any quan-

tity whatever, within the limits of a unit which has, by its vote, decided against the licensing of the sale of intoxicating liquor, or who shall keep or have in his possession any intoxicating liquor with intent to sell, give away or otherwise dispose of such liquor in violation of the provisions hereof,"

shall, upon conviction, be fined not less than $20 nor more than $200, *or* imprisoned in the county jail for not less than ten days nor more than thirty days, *or* be punished by both such fine and imprisonment. The section further provides that, upon a second conviction the penalty shall be a fine of not less than $100 nor more than $500 *and* imprisonment in the county jail for not less than ten days nor more than ninety days, and that, upon a third and each subsequent conviction, the penalty shall be a fine of not less than $200 nor more than $1,000, *and* imprisonment in the county jail not less than three months nor more than one year.

Section 12 defines what constitutes an unlawful sale, and is as follows:

"The giving away, delivering or handling of any intoxicating liquor by any storekeeper at any place of business, or the taking or soliciting of orders, or the making of agreements for the sale or delivery, or for the giving away, of any intoxicating liquor within the limits of a unit which shall have voted against licensing the sale of intoxicating liquor therein, or any other device to evade the provisions hereof, shall be deemed an unlawful sale . . ." (Id., § 6303).

Section 16 provides:

"It · shall be unlawful for any physician to issue a prescription for intoxicating liquor except in writing or in any case unless such physician has good reason to believe that the person for whom it is issued is actually sick and the liquor is required as medicine." (Id., § 6307).

Section 17 provides:

"Nothing in this act shall be construed to forbid or prevent the sale within any unit which has voted against the sale of intoxicating liquor therein, by a druggist or pharmacist, of liquor upon prescription for medical purposes,

or for sacramental purposes, or of alcohol for medicinal, mechanical or chemical purposes only, . . ." (Id., § 6308).

It further provides that the druggist shall keep a true and exact record of each sale, together with the name, residence, and street address of the purchaser, the date of the sale, the kind, quantity, and price of the liquor, the purpose for which it is sold and, if the sale is for medical purposes, the name of the physician issuing the prescription therefor; that the record shall be signed by the purchaser; that the prescription shall be marked "cancelled" and not refilled, and that the record shall be open to inspection by the prosecuting attorney of the county and the judge or justice of the peace having criminal jurisdiction therein or any sheriff, constable, marshal, or other police officer within the county. It is further provided that a violation of the provisions of the section shall be a misdemeanor. Section 18 provides:

"It shall be unlawful for any person, or public or private carrier, to accept or receive for shipment, transportation or delivery to any person or place within any unit in which the sale of intoxicating liquor is forbidden under the provisions of this act, or to carry, bring into or transfer to any other person, carrier or agent, or handle, deliver or distribute in any such unit any intoxicating liquor of any sort or character whatsoever; . . . *Provided, however,* That nothing herein contained shall be construed to apply . . . to shipments or deliveries at residences which are not places of business or of public resort, by manufacturers or wholesalers in their own conveyances, or by any common carrier or otherwise, any unbroken packages." (Id., § 6309).

Section 20 (Id., § 6311) provides that the issuance of an internal revenue special tax stamp by the Federal government to any person as a retail dealer in intoxicating liquor, at any place within a dry unit, shall be *prima facie* evidence of the sale of intoxicating liquor by such person within such unit; provided "that this section shall not apply to wholesalers, manufacturers or druggists."

Counsel for the respondent, after discussing and analyzing the statute, summarizes his contention as follows:

"From it all we must conclude that the legislature only intended by this act to place the question in the hands of the people to say whether retail liquor dealers should be permitted to carry on their business or not, and where by a vote of the people the local option law became effective, it was the sole intention to put the retail dealer out of business *and does not in any wise affect the business of a druggist, a manufacturer or a wholesaler.*"    (The italics are counsel's.)

We cannot subscribe to this view.   If this had been the intention of the legislature, the title of the act would have been limited to the question of licensing the retail dealer.   The whole scope and purpose of the act, as we read it, is to promote temperance and sobriety, and to that end to permit the electors of each unit to prohibit the sale of intoxicating liquors within that unit, not by retail dealers alone, but absolutely except by druggists and pharmacists.   The act we think speaks this construction and no other.   If the legislature had intended that each unit should determine for itself whether intoxicating liquors should thereafter be sold by wholesalers, manufacturers, and druggists, only, it would have used language reasonably tending to express that view. If the respondent's construction of the statute is correct, one-half of the act is surplusage.   It is conceded that the act does not, in direct terms, provide that wholesalers may sell within a dry unit, but the logic of the argument is that, because they are by inference permitted to exist within a dry unit, and because the wholesaler in wet territory may sell within that territory and deliver in unbroken packages to a purchaser within a dry unit, it follows that the wholesalers within the dry unit may both sell and deliver within such unit.   The argument runs counter, not only to the obvious purpose of the act, but to some clear and express provisions to the contrary.

A reference to the sections of the act quoted makes it plain that the legislature was not niggardly in the use of the word

"sale," but rather that it used that word whenever and where-ever it intended to permit a sale in a dry unit. This word occurs many times in the act. To illustrate: it is used once in the title of the act, twice in section 1, thrice in section 2, once in section 3, thrice in section 5, seven times in section 6, twice in section 7, twice in section 9, and a number of times in the following sections. As we have seen, section 6 ex-pressly provides that, when a dry unit has been established and the result has become operative, "no intoxicating liquor save as hereinafter provided shall be sold within that unit until permission to do so be granted at an election held for that purpose." By section 9 it is provided that, when a vote has become operative within a dry unit, it shall not be lawful to sell, give away, or in any manner dispose of intox-icating liquor "in any quantity whatever" within such unit. Section 11, as we have seen, forbids the sale, etc. "in any quantity whatsoever" within a dry unit, and provides severe penalties for those who offend its provisions. Section 12 defines an unlawful sale. Section 17 permits sales by drug-gists and pharmacists under careful and stringent restric-tions, and it is the only section in the act which in terms per-mits a sale within a dry unit. Section 18 has reference to deliveries, and provides for the shipping and carrying of in-toxicants into dry units in unbroken packages from some point without such unit, and seemingly permits the whole-saler, having his place of business within the dry unit, to de-liver his goods therein, But this section does not, in the light of the other provisions of the act, permit him to sell his goods in a dry unit. The contention that the provision in section 10 affecting the retail liquor dealer, when read in con-nection with the provisos in sections 18 and 20, permits the wholesaler having his place of business in the dry unit to sell within such unit would, if upheld, do violence to other provisions of the act which expressly prohibit any sale within the unit except by druggists and pharmacists. More-over, if the respondent may sell in a dry unit in defiance of

the express prohibitions in sections 6, 9, and 11, of the act, we can see no reason why he may not solicit orders in defiance of section 12 of the act, and the result would be that the liquor trade would be transferred from the former licensed and regulated retail liquor dealer to the unlicensed and unregulated wholesale dealer. A construction leading to such an absurdity will not be adopted.

The act is pregnant with but one meaning, and that meaning is that intoxicating liquors shall not be sold in dry units except by druggists and pharmacists. Any other view would take the life blood out of the act. The wholesaler within a dry unit must, like his competitor without that unit, make his sales in wet territory. As we have suggested, had it been the intention of the law-making body to permit a unit to prohibit only the sale of intoxicating liquors at retail, that purpose would have been expressly stated in both the title and the body of the act, and it would not have taken twenty-two sections to state it. To hold that the language in the proviso to section 18 implies the right of a wholesaler in a dry unit to both sell and deliver therein would be to read out of the statute words of clear and certain meaning, and to read into it a privilege which the law-making branch of the government deemed it wise to withhold. The provisions in the act that intoxicating liquors shall not be sold in a dry unit "in any quantity whatever," that the taking or soliciting of orders or the making of agreements for the sale or delivery therein shall be deemed an unlawful sale, the stringent penalties flowing from a violation of the act, the care taken to safeguard sales by druggists and pharmacists who are privileged to sell—all point to the conclusion that all sales of intoxicating liquors within a dry unit, not expressly permitted by the act, are prohibited.

"The general purpose or spirit of the act must always be held in view." *Dennis v. Moses,* 18 Wash. 537, 52 Pac. 333, 40 L. R. A. 302. When the object and general intent of a statute are ascertained, general words may be re-

strained to it, and those of narrower import may be expanded to effectuate that intent. *Barto v. Stewart*, 21 Wash. 605, 59 Pac. 480. This construction of the statute is supported by the principles announced in the following cases: *State v. Maire*, 66 Wash. 591, 120 Pac. 87; *State v. Jones*, 66 Wash. 229, 119 Pac. 384.

The office of a proviso is thus defined in 36 Cyc. 1162-3:

"It should be construed together with the enacting clause, with a view to giving effect to each and to carrying out the intention of the legislature as manifested in the entire act. The enacting clause is of course the principal part of the statute, and, as its terms may be presumed to have embodied the main object of the act, the proviso should be strictly construed. . . . So the operation of a proviso is usually and properly confined to the clause or provision immediately preceding; . . ."

*Towson v. Denson*, 74 Ark. 302, 86 S. W. 661, defines its office as follows:

" 'When the enacting clause is general in its language and objects, and a proviso is afterwards introduced, that proviso is construed strictly, and takes no case out of the enacting clause, which does not fall fairly within its terms.' "

In *United States v. Bernays*, 158 Fed. 792, it is said that

"A proviso should be construed with reference to the subject-matter of the sentence of which it forms a part unless it clearly appears to be designed by the legislature for a broader or more independent operation."

"A construction of a proviso which is plainly repugnant to the body of the act is to be avoided if possible." 26 Am. & Eng. Ency. Law (2d ed.), 681.

Inasmuch as there are cases pending here involving the rights of the manufacturer under the terms of this act, we have refrained from making any direct reference to the following proviso to section 18:

"*Provided*, that nothing in this act shall be construed to prohibit the manufacture of intoxicating liquor from the raw material in any no-license unit, nor the delivery of the same."

We conclude that the trial court erred in sustaining the demurrer, and the judgment is reversed.

DUNBAR, C. J., CROW, and PARKER, JJ., concur.