[No. 10155.   Department Two.   November 1, 1912.]

THE STATE OF WASHINGTON, *Appellant*, v. BELLINGHAM BAY BREWERY, *Respondent*.[1]

INTOXICATING LIQUORS—OFFENSES—ILLEGAL SALES—LOCAL OPTION —SALES BY .MANUFACTURERS—STATUTES—CONSTRUCTION. The local option law, Rem. & Bal. Code, § 6309, which permits the manufacturers or wholesalers in a no-license unit to make shipments or deliveries in their own conveyances of unbroken packages to patrons at private residences, does not permit the manufacturer to make sales in a no-license unit; in view of the restrictions in the act against all sales in such units (CHADWICK, J., dissenting).

Appeal from a judgment of the superior court for Whatcom county, Kellogg, J., entered December 27, 1911, upon sustaining a demurrer to the information, dismissing a prosecution for selling liquor in a dry unit in violation of the local option law. Reversed.

*Frank W. Bixby* and *Howard C. Thompson*, for appellant.
*Chas. A. Sather*, for respondent.

FULLERTON, J.—The respondent was accused, by an information filed in the superior court of Whatcom county, of the offense of selling intoxicating liquors in violation of the act of March 12, 1909, commonly known as the local option law. The information, aided by a written stipulation of facts filed therewith, sets forth that the city of Bellingham is a unit in which the sale of intoxicating liquor is prohibited; that the respondent, the Bellingham Bay Brewery, is a corporation engaged in the manufacture of intoxicating liquors from raw materials, having its manufacturing plant within the corporate limits of the city of Bellingham, which plant was constructed prior to the passage of the local option law; that on December 20, 1911, the respondent sold to one John Doe, for cash at its manufacturing plant, one case of beer

[1]Reported in 127 Pac. 298.

containing 24 bottles, and agreed to, and did immediately
thereafter, deliver the same in its own conveyance at the pri-
vate residence of the purchaser, in the city of Bellingham.
It was conceded by the state that the respondent had the
right to manufacture intoxicating liquors at its plant and
deliver the same to its patrons in good faith within the limits
of the city of Bellingham, provided it does so in its own con-
veyance at the private residences of such patrons.   It is also
conceded that the respondent has complied with the general
license laws with reference to its business.   A demurrer was
interposed to the information, based on the ground that the
same did not state facts sufficient to constitute an offense,
which demurrer the trial court sustained and dismissed the
proceedings.   The state appeals.

The appeal presents but a single question; namely, can a
person who manufactures intoxicating liquor from raw ma-
terial in a unit which has voted against the sale of intoxicat-
ing liquor therein sell the same in that unit.   The court had
occasion to examine the provisions of the local option act in
the late case of *State v. Robinson,* 67 Wash. 425, 121 Pac.
848, which involved the question whether a wholesale dealer
in intoxicating liquors could make sales of the same in a
unit which had voted against the sale of intoxicating liquors
therein, the act not forbidding such dealer to deliver in his
own conveyances, or through common carriers, any unbroken
package of liquor to residences of individuals in such unit
which are not places of business or of public resort.   In the
course of the opinion, we took occasion to point out the sev-
eral provisions of the act which referred to sales of intoxi-
cating liquor, and sought to show that the legislature had,
in all of the several sections of the act, unless the one on
which the wholesale dealer relied was an exception, defined
in unequivocal language the instances when, and the persons
by whom, sales of intoxicating liquors could be made, draw-
ing the conclusion therefrom that the section on which the

dealer relied did not authorize such sale.   In the course of the opinion, this language being used:

"The act is pregnant with but one meaning, and that meaning is that intoxicating liquors shall not be sold in dry units except by druggists and pharmacists.   Any other view would take the life blood out of the act.   The wholesaler within a dry unit must, like his competitor without that unit, make his sales in wet territory.   As we have suggested, had it been the intention of the law-making body to permit a unit to prohibit only the sale of intoxicating liquors at retail, that purpose would have been expressly stated in both the title and the body of the act, and it would not have taken twenty-two sections to state it.   To hold that the language in the proviso to section 18 implies the right of a wholesaler in a dry unit to both sell and deliver therein would be to read out of the statute words of clear and certain meaning, and to read into it a privilege which the law-making branch of the government deemed it wise to withhold.   The provisions in the act that intoxicating liquors shall not be sold in a dry unit 'in any quantity whatever,' that the taking or soliciting of orders or the making of agreements for the sale or delivery therein shall be deemed an unlawful sale, the stringent penalties flowing from a violation of the act, the care taken to safeguard sales by druggists and pharmacists who are privileged to sell—all point to the conclusion that all sales of intoxicating liquors within a dry unit, not expressly permitted by the act, are prohibited."

Section 18 of the act to which we there referred reads as follows:

"It shall be unlawful for any person, or public or private carrier, to accept or receive for shipment, transportation or delivery to any person or place within any unit in which the sale of intoxicating liquor is forbidden under the provisions of this act, or to carry, bring into or transfer to any other person, carrier or agent, or handle, deliver or distribute in any such unit any intoxicating liquor of any sort or character whatsoever; and whoever shall, either as principal, agent or servant, knowingly violate any of the provisions of this section shall, upon conviction thereof, be fined not less than fifty dollars nor more than five hundred dollars, and upon a subsequent violation of this section, in addition to the fine

hereinbefore prescribed, he shall, if a natural person, be imprisoned in the county jail for not less than thirty days nor more than six months: Provided, however, That nothing herein contained shall be construed to apply to any individual who may bring into such unit upon his person or as his personal baggage and for his private use intoxicating liquor in quantity not to exceed one gallon of spirituous liquor or one case of malt liquor, nor to physicians or druggists to whom any public carrier may deliver such goods in unbroken packages, nor to deliveries to churches or the proper officers thereof of wine in unbroken packages for sacramental purposes, nor to shipments or deliveries at residences which are not places of business or of public resort, by manufacturers or wholesalers in their own conveyances, or by any common carrier or otherwise, any unbroken packages of liquor, nor to shipments of liquor in continuous transit to a point outside of such unit, nor to shipments of commercially pure alcohol for mechanical or chemical purposes. This section shall apply to all packages of intoxicating liquor, whether broken or unbroken, and the carrying into or delivery of each such package of intoxicating liquor, regardless of the name by which it may be called, accepted, received, carried, transferred, handled, delivered, or distributed in violation of the provisions of this section, shall constitute a separate offense, and any liquor so carried or delivered shall be forfeited and shall be destroyed by the officer seizing the same: Provided, That nothing in this act shall be construed to prohibit the manufacture of intoxicating liquor from the raw material in any no-license unit, nor the delivery of the same." Laws 1909, p. 165; Rem. & Bal. Code, § 6309.

In the case to which we have just referred, the defendant relied upon the first proviso. It will be observed that, while a wholesale dealer is permitted to deliver at residences which are not places of business or of public resort intoxicating liquor in unbroken packages, nothing is said in the immediate connection concerning the sale of such liquors therein, although sales in no-license units were expressly prohibited by preceding sections, and the argument was that sale and delivery were practically synonymous terms, and that the legislature must have intended to permit sales of intoxicat-

ing liquors to be made in no-license units by the persons who were authorized to make delivery of such liquors therein. It was to refute this contention that the language was used which we have quoted.

In the present case, the defendant relies upon the last proviso quoted. He likewise contends that permission to one in his situation to make deliveries in a no-license unit is permission to make sales therein. But we cannot so conclude. A manufacturer whose plant is in a no-license unit can continue therein to manufacture intoxicating liquors out of raw materials, and he may make deliveries from his plant to "residences which are not places of business, or of public resort," in his own conveyance or by common carrier; but on the authority of the case cited, he cannot make sales of his product in such units. Sales can only be made, if made within the state, in those units where the sale of liquor is licensed.

It follows that the trial court erred in sustaining the demurrer and dismissing the proceedings. Its judgment is therefore reversed, and the cause is remanded with instructions to reinstate the case, overrule the demurrer, and proceed with its further hearing in the manner prescribed by law.

MOUNT, C. J., ELLIS, and MORRIS, JJ., concur.

CHADWICK, J. (dissenting)—I would be glad to concur in the opinion of my associates if it were not for certain rules of statutory construction which in my judgment are violated by the rule of the majority. The first rule of statutory construction is to ascertain, if possible, the legislative intent. Another, of almost equal force, is that a rule which will lead to absurd consequences in the operation of the statute should not be formulated by the court. In this case there is no reason for the speculation indulged in by the majority. The record of the local option bill is before us. When it was introduced in the house, it is certain that there was no exception in favor of the manufacturer in a dry unit. The bill was referred to a committee, and certain amendments

were proposed.   The last proviso in section 18 came from the
committee in the following form:

"*Provided*, That nothing in this act shall be construed to
prohibit any manufacturer of intoxicating liquor from the
raw material in any no-license unit from delivering the same
*outside* of such unit, when permitted by law."   Journal of
the House (1909), p. 536.

(The italics are my own.)   When the bill came on for con-
sideration, "Mr. Beach moved to amend by striking the words
'any manufacturer,' in line 22 in said section 18, and inserting
in lieu thereof the words 'the manufacture', and by striking
the word 'from' at the end of line 23, and inserting in lieu
thereof the words 'nor the delivery of the same.' "   Id. 546.

The  committee  amendment  permitted  a  delivery  when
made *outside* of the unit only.   The amendment adopted by
the house clearly intended that liquor might be manufac-
tured in the dry district and delivered therein.   Such was
the understanding of the legislative body.   The bill had for-
merly been considered by the senate.   The bill was after-
wards considered in conference, and later, upon motion of
Senator Falconer that the senate "do concur" in the house
amendments, Senator Cotterill, whose interest in, and under-
standing of, the local option law cannot be questioned, said:

"This is probably the closing vote in connection with the
local option matter at this session.   It seems apparent that
the House amendments to Senate substitute bill No. 121 will
be concurred in, and that it will become the law for the next
two years.   If this were the last legislative session to be held
in this state for many years, I should be tempted to vote for
this amended bill.   It is probably the best compromise bill
that can be wrung from the political headquarters of  the
combined liquor interests of this state.   I have labored too
long and acquired too much experience in the great struggle
of the home against the saloon to accept temperance legisla-
tion with brewery modifications.   Even where saloons may be
outlawed under the operation of this bill—and I sincerely
hope they may and shall earnestly work to that end—the
brewery wagon will still have the unrestricted right-of-way

for its business everywhere throughout our state, and the express companies and other delivery agencies will do an unrestrained business in 'booze'; all by the direct authorization of the amended bill now before us, and regardless of the will of the majority in any locality.

"This bill may still be called a 'local option' bill, but it is so 'local' as to permit the fourth-class town, even down to 300 population, incorporated within one square mile, to be a unit to itself, and inflict its saloons and their consequences upon an unconsenting surrounding community which supports it and of which it is only the small business center. The 'option' in this bill is all on the side of the brewery. Whatever may be the vote of the people in any locality, it stays and does business and sells its product where it pleases

. . . . . .

"I have voted for one local option bill at this session, the Falconer full county-unit bill, with its thorough law-enforcement features.   Every effort and energy at my command have been exhausted to secure its enactment.   I am content with that record, and refuse any responsibility for the amended bill now forced upon us as this last resort.   I desire this protest against it to be entered upon the record, and when the roll is called upon the question of concurrence with the House amendments, I shall vote 'No'."   Journal of the Senate (1909), p. 816.

Senator Cox, who also appreciated the force and meaning of the house amendment as well as the intent of the legislature, caused views of like import to be put in the record. Journal of the Senate (1909), p. 817.   With this record before us, it seems that the court should not be warranted in indulging in what I conceive to be highly technical reasoning to sustain a construction which, in effect, negatives the vote of a majority, indeed a very great majority, of the senators and representatives voting upon the amendments to and passage of the bill.   It occurs to me, as it did to the senators I have quoted, that the common sense of the amendment is that, if a manufacturer can make and deliver in a dry unit, a right to accept compensation for his goods is necessarily implied.   The very question before this court

having been discussed and repudiated by the legislature, it would be more in keeping with the duty and province of this and other courts to leave the matter with the legislature for any change or amendment. If it were not for the legislative record, it might be that the reasoning of the court could be sustained, but it cannot be with the light we have before us.

The majority has declared the law as it applies to wholesalers, to manufacturers, and, as I have said, it leads to a ridiculous consequence. The object of the amendment to the proviso is plain; it was to protect the manufacturer in his family trade, and at the same time to leave to the purchaser a privilege which he might indulge without resort to that circumlocution which ordinarily marks the conduct of a malefactor. Under this decision, the manufacturer of liquor from the raw product in a dry unit may manufacture at will, but he cannot make delivery "to churches or the proper officers thereof of wine in unbroken packages for sacramental purposes," nor "shipments or deliveries at residences which are not places of business or of public resort," if the order is given at his place of business. The manufacturer must resort to a shallow subterfuge. As I understand the majority opinion, it amounts to this: The manufacturer can appoint an agent or open an office in a wet unit, and a customer may send his order to that unit and, upon its transmission, the manufacturer can deliver the goods. They say this is a *sale* in a wet unit. It may be so, but it does violence to the purpose and spirit of the law as well as the clear expression of the legislative body. In other words, a customer can call up the manufacturer and order liquor in unbroken packages, and the manufacturer must say to him: "You cannot order it at the factory. You must buy it through our office in Seattle, or wherever it may be established. When you have done this, we will deliver the goods." Such is the law as I understand it to be written by the court.

The judgment of the lower court should be affirmed.