[No. 11693. Department One. January 6, 1915.]

THE STATE OF WASHINGTON, *Appellant*, v. NORTHERN PACIFIC RAILWAY COMPANY, *Respondent*.[1]

INTOXICATING LIQUORS — LOCAL OPTION — SHIPMENTS — WHOLE-SALER'S STOCKS AND DELIVERIES IN DRY UNITS. It is not a violation of the local option law, Rem. & Bal. Code, § 6309, for a common carrier to ship intoxicating liquors in original packages to a wholesaler within a dry unit, to replenish his stock or to make deliveries on orders taken in a wet unit; since the prohibition of shipments into a dry unit excepts shipments or deliveries of unbroken packages at residences by manufacturers or wholesalers or by any common carrier, and only requires "retailers" to dispose of their stocks, and provides that the act shall not be construed to prohibit the manufacture of intoxicating liquors in any no-license unit, "nor the delivery of the same;" thereby allowing wholesalers to make sales in wet units, and replenish their stocks and make deliveries in dry units.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered August 21, 1913, dismissing prosecutions for violation of the local option law, upon sustaining demurrers to the informations. Affirmed.

*Frank W. Bixby* and *Walter A. Martin*, for appellant.

*George T. Reid, J. W. Quick, L. B. da Ponte*, and *Isaac D. Hunt*, for respondent.

CROW, C. J.—Two informations were filed by the prosecuting attorney of Whatcom county against the Northern Pacific Railway Company, a corporation, charging it with a viola-

[1]Reported in 145 Pac. 187.

tion of ch. 81, Laws of 1909, p. 153 (Rem. & Bal. Code,
§ 6292, *et seq.*), commonly known as the local option law.
By agreement of the parties, an amended information was
filed in each case. One of these amended informations, omit-
ting formal parts, reads as follows:

"Then and there being the said defendant, Northern Pacific
Railway Company, a corporation, did then and there wilfully
and unlawfully bring into Bellingham, Whatcom County,
State of Washington, on or about the 26th day of April,
1913, a car load of intoxicating liquor, the said defendant
Northern Pacific Railway Company being a public carrier,
and the said liquor being consigned to the Puget Sound
Bottling Works, a co-partnership, consisting of Raffeal Geri
and Benjamin Geri, engaged in part in the sale of intoxicat-
ing liquors at wholesale, and the said Bellingham being then
and there a dry unit under Chap. 81 of the Session Laws of
1909.

"That on or about the 20th day of April, 1913, the said
Puget Sound Bottling Works, a co-partnership, ordered from
a manufacturing wholesale brewery in Portland, Oregon, the
said car load of bottle beer, the same consisting of 405 cases;
that the same was delivered in Portland, Oregon, to the
Northern Pacific Railway Company, the above named defend-
ant corporation, who agreed to transport the said beer to
Bellingham, consigned to the said Puget Sound Bottling
Works, a co-partnership, and issued its bill of lading there-
for; that thereupon the said Northern Pacific Railway Com-
pany, a corporation, defendant herein, did transport said car
load of beer to Bellingham, Washington, the freight having
been prepaid by the shipper at Portland, Oregon; that the
said Northern Pacific Railway Company, a corporation, de-
fendant herein, did as a public carrier bring the said car load
of beer into Bellingham, a dry unit under the Session Laws
of 1909, State of Washington, the same being known as the
'Local Option Law,' and the same was transferred to the said
consignee, Puget Sound Bottling Works, a co-partnership,
at the side track of the said defendant corporation in Belling-
ham, Whatcom County, Washington, on or about the 28th
day of April, 1913; that the said Puget Sound Bottling
Works immediately transferred the said beer to its warehouse
in Bellingham, Washington, the same not being a place of

public resort, but a place of storage only, and that subsequently, to wit, on or about May 1, 1913, and on subsequent consecutive days, the said Puget Sound Bottling Works, made deliveries therefrom in the original package at various residences in Bellingham, Washington, after the sale of the same by orders taken in wet units."

The other amended information was substantially the same, except that it charged that a car load of bottled beer was consigned to Benjamin Geri, a member of the partnership firm known as the Puget Sound Bottling Works; that the beer had been ordered by Benjamin Geri; that it was delivered to him by the Northern Pacific Railway Company on defendant's side track in the city of Bellingham; that Benjamin Geri immediately transferred the shipment to his private residence; that on the same day and on subsequent days he and the Puget Sound Bottling Works · made deliveries in original packages at various residences in Bellingham after sales made by orders taken in wet units. It will thus be seen that the only material difference between the two amended informations is that in one instance a car load of beer was taken to the warehouse of the firm, while in the other it was taken to the private residence of a member of the firm.

It was stipulated that the two cases might be heard together, and they have been consolidated in this court. The defendant interposed a demurrer to each of the amended informations. Prior to the hearing of these demurrers, the parties filed a stipulation in each case setting forth certain facts which they agreed should be considered by the trial court in passing upon the demurrers. The facts in· the first case thus stated in substance are: That on or about April 20, 1913, the Puget Sound Bottling Works ordered from a brewery in Portland, Oregon, one carload of bottled beer which was there delivered to the Northern Pacific Railway Company for transportation to Bellingham consigned to the Puget Sound Bottling Works; that having issued its bill of lading therefor, the railway company transported the beer

to Bellingham, the freight thereon having. been prepaid by
the shipper at Portland, Oregon; that the sale to the Puget
Sound Bottling Works by the brewery was made at Portland,
Oregon; that the beer was packed by the shipper in original
unbroken packages containing twenty-four quarts each, and
was thus carried and delivered; that it arrived in Bellingham
on April 26, 1913, and on April 28, 1913, was delivered by
the railway company at its side track; that the Puget Sound
Bottling Works, with its own conveyances transported the
beer in the original and unbroken packages to its warehouse
in Bellingham; that the warehouse is not a place of public
resort, but is a place of storage only; that subsequently de-
liveries of the beer were made at residences in Bellingham;
that the Puget Sound Bottling Works is not engaged in
selling intoxicating liquors at retail; that the carload of
beer was ordered for its convenience in the matter of making
deliveries after it had taken orders for the sale and delivery
at residences in Bellingham, Whatcom county, Washington,
the sales and orders for such deliveries being made in wet
units outside of the dry unit; that the Puget Sound Bottling
Works has complied with all license laws with reference to its
business; and that the Federal statute (Act of March 1,
1913, 37 Stat. 699), commonly known as the Kenyon-Webb
act, was, at all times subsequent to April 1, 1913, in full
force and effect. This stipulation is somewhat peculiar, as
by its terms it seems to be agreed that the Puget Sound Bot-
tling Works made sales and accepted orders in wet units for
delivery in the identical dry unit where its stock of goods
was held and located. However, we will consider the facts as
they are stipulated. The trial court sustained a demurrer to
each of the informations, and discharged the defendant. The
state has appealed.

Appellant's contention is that the respondent violated § 18
of the local option act (Laws 1909, p. 165), which reads as
follows:

"It shall be unlawful for any person, or public or private carrier to accept or receive for shipment, transportation or delivery to any person or place within any unit in which the sale of intoxicating liquor is forbidden under the provisions of this chapter, or to carry, bring into or transfer to any other person, carrier or agent, or handle, deliver or distribute in such unit any intoxicating liquor of any sort or character whatsoever; and whoever shall, either as principal, agent or servant, knowingly violate any of the provisions of this section shall, upon conviction thereof, be fined not less than fifty dollars nor more than five hundred dollars, and upon a subsequent violation of this section, in addition to the fine hereinbefore prescribed, he shall, if a natural person, be imprisoned in the county jail for not less than thirty days nor more than six months. Provided, however, That nothing herein contained shall be construed to apply to any individual who may bring into such unit upon his person or as his personal baggage and for his private use intoxicating liquor in quantity not to exceed one gallon of spirituous liquor or one case of malt liquor, or to physicians or druggists to whom any public carrier may deliver such goods in unbroken packages, nor to deliveries to churches or the proper officers thereof of wine in unbroken packages for sacramental purposes, nor to shipments or deliveries at residences which are not places of business or of public resort, by manufacturers or wholesalers in their own conveyances, or by any common carrier or otherwise, any unbroken packages of liquor, nor to shipments of liquor in continuous transit to a point outside of such unit, nor to shipments of commercially pure alcohol for mechanical or chemical purposes. This section shall apply to all packages of intoxicating liquor, whether broken or unbroken, and the carrying into or delivery of each such package of intoxicating liquor, regardless of the name by which it may be called, accepted, received, carried, transferred, handled, delivered, or distributed in violation of the provisions of this section, shall constitute a separate offense, and any liquor so carried or delivered shall be forfeited and shall be destroyed by the officer seizing the same: Provided, That nothing in this chapter shall be construed to prohibit the manufacture of intoxicating liquor from the raw material in any no-license unit, nor the delivery of the same. . . ." Rem. & Bal. Code, § 6309.

If § 18 were to be considered alone, and if we were to ignore its second proviso, there might be some force in the argument which appellant makes to the effect that shipments of intoxicating liquors in original packages cannot be lawfully made to a wholesaler in a dry unit for the purpose of replenishing his stock of goods, but the language, and the intent and purpose of the entire act must be considered. As stated by this court in *State v. Robinson*, 67 Wash. 425, 121 Pac. 848, the manifest purpose of the act is to prevent sales of intoxicating liquor in dry units, but the right of a wholesale dealer to continue his place of business in a dry unit, provided that he makes no sales therein, and confines his sales to wet units was recognized. We there said:

"Section 18 has reference to deliveries, and provides for the shipping and carrying of intoxicants into dry units in unbroken packages from some point without such unit, and seemingly permits the wholesaler, having his place of business within the dry unit, to deliver his goods therein. But this section does not, in the light of the other provisions of the act, permit him to sell his goods in a dry unit.  .  .  .  The act is pregnant with but one meaning, and that meaning is that intoxicating liquors shall not be sold in dry units except by druggists and pharmacists. Any other view would take the life blood out of the act. The wholesaler within a dry unit must, like his competitor without that unit, make his sales in wet territory."

Section 10 (Id., § 6301) of the act provides that, within ten days after the date when the result of any election under the act has become operative, every *retail* liquor dealer within the dry unit shall remove or cause to be removed, all intoxicating liquor from his place of business, and that failure so to do shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, given away, or otherwise disposed of in violation of the provisions of the act. There is no such provision as to wholesalers. Section 20 (Id., § 6311) provides that the issuance of an internal revenue special tax stamp or receipt by the United States to any person as a

7—83 wash.

*retail* liquor dealer at any place within a unit in which at the time of the issuance thereof the sale of intoxicating liquor was forbidden, shall be *prima facie* evidence of the sale of intoxicating liquor by such person, but provides that the section shall not apply to wholesalers. There is no provision in the act making it unlawful for a wholesaler to have his place of business in a dry unit, and store his stock of goods therein, although his sales, if any, must be made in wet units exclusively. Neither is there any provision in the act requiring the wholesaler to dispose of his stock of goods at any time after the local option statute takes effect in the dry unit where his place of business is located.

Appellant contends that the only purpose of the provision of the act requiring a retailer to dispose of his stock of goods, while permitting a wholesaler to retain his, was to afford the wholesaler a reasonable time within which he might gradually dispose of his stock by sales made in wet units in the due course of trade, but that section 18 (Id., § 6309), which prohibits the shipment of intoxicating liquors into a dry unit discloses an evident intention that the wholesaler shall not be permitted to replenish his stock within such dry unit. If the legislature had so intended, it certainly would have so stated in an act of the length of the one now before us. Our construction is that the wholesaler is permitted to retain his place of business and store his stock of liquors in the dry unit, but that he cannot make any sales in such dry unit. If the act so contemplated, and it certainly does, the wholesaler could not continue his business of making sales in wet units without the right of replenishing his stock and receiving shipments for that purpose. The question naturally arises, How could he maintain his stock unless it may be shipped to him from outside the dry unit, and be delivered to him in original packages by a common carrier? The second proviso of section 18 (Id., § 6309) is "That nothing in this chapter shall be construed to prohibit the manufacture of intoxicating liquor from the raw material in any no-license

unit, nor the delivery of the same." The history of the adoption of this proviso by the legislature is set forth by Judge Chadwick in his dissenting opinion in *State v. Bellingham Bay Brewing Co.*, 70 Wash. 654, 658, 127 Pac. 298. Construing this proviso, and especially the last clause "nor the delivery of the same" in the light of the entire act, and in connection with the fact that the wholesaler may maintain a place of business and have a stock of intoxicating liquors in a dry unit for the lawful purpose of making sales in wet units, it would seem that the respondent committed no offense, when it delivered liquors in unbroken packages to the wholesaler in the dry unit. It may be that this construction of the statute will afford the wholesaler a better opportunity for evading and violating the law by making illegal sales in a dry unit after he thus obtains his stock of goods; but, if so, the responsibility lies with the legislature and not with the courts, and the remedy, if any, must be obtained by legislation and not by judicial interpretation. If a wholesaler should violate the law by making illegal sales within a dry unit after he has lawfully obtained his stock of intoxicating liquor within such dry unit, criminal prosecutions should be instituted against him and not against the common carrier which lawfully delivered his stock of liquors. Our conclusion is that the trial court committed no error in sustaining the demurrers. The conclusion we have reached makes it manifest that the Kenyon-Webb act has no application to the facts of this case.

The judgment is affirmed.

MAIN, MORRIS, ELLIS, and GOSE, JJ., concur.