## THE SYRACUSE.

*(District Court, S. D. New York.    December 14, 1883.)*

1. COLLISION WITH PIER—TURNING—INTENTIONAL STRIKING—OLD BOATS—NOTICE.

The tug S., with the canal-boat K. lashed to her side, in turning round in the Morris canal basin, intentionally ran or rubbed against the "middle pier" to assist in turning, and afterwards against a float of spiles. Two holes were thereby made in the K., and she afterwards sank. In a conflict of testimony, *held,* the blow was unjustifiable, whether for a new or an old boat, and that any such blow approaching to violence is at the tug's risk, and the practice condemned.

2. SAME—OLD BOAT—NOTICE.

An owner of an old boat towed, if she is not staunch and strong, is bound to give notice of her weakness to the tug, otherwise he can only claim the benefit of ordinary care in the tug's handling of her.

3. SAME—DAMAGES.

The evidence showing that the K. was an old boat, not staunch and strong, and no such notice having been given, *held*, the owner should recover but half his damages.

In Admiralty. Collision.

*J. A. Hyland,* for libelant.

*Edwin G. Davis,* for claimant.

BROWN, J. On the eighth of September, 1880, the steam-tug Syracuse took in tow the canal-boat Kearsage, loaded with staves, at the Morris canal basin, to be towed to the East river. In the course of turning around in the basin, immediately after leaving the dock, the tug intentionally ran against what is called the middle pier, which is in the middle of the basin, for the purpose of expediting the turning of the boats, and a few rods further on she rubbed or hit against a float of spiles near the opposite side of the basin. Two holes were thereby stove in the canal-boat near amidships, and below the water line, so that she sank several hours afterwards. This libel was filed to recover for the damages thereby sustained. The defense is that the boat was unseaworthy and rotten, and that the contact with the pier and spiles was nothing more than was usual and justifiable in the course of turning. The tow was lashed upon the starboard side of the tug. Although the pilot of the tug testifies that there was no blow, but only the usual rubbing to assist in turning, I am satisfied from the evidence of the owner and the wheelsman of the Kearsage that there was a very decided, if not powerful, blow. They both testify that it was a violent blow, such as caused the boat to roll. Just before reaching the pier the owner of the canal-boat, seeing that they were going to strike, sang out to the pilot of the tug protesting against it, and the latter replied that it would do no harm. The latter testifies that it was necessary to run against the pier in order to make the turn, as the channel there was narrow. This cannot be accepted as a sufficient justification. If he could not have backed any further on his spring lines before leaving the dock, as he says, there were plenty of other means at the command of a tug, in handling a single tow, without injuring her by running against a stationary structure.

The practice of running vessels or canal-boats in tow, whether new or old, against other vessels or piers, for the purpose of rapid handling, is dangerous, sure to lead to disputes, and, when approaching anything like a forcible blow, must be held to be at the risk of those who practice it. *The Nebraska,* 2 Ben. 500; *The Harry,* 15 FED. REP. 161. The captain of the tug in this case had had much experience in this basin, but this was no guaranty that in running against the pier the blow might not be severer than he intended.

Those in the canal-boat were in a much better situation to observe the force of the blow, and I am satisfied that their account of it is substantially correct, and that it was a blow unjustifiable in the navigation of either new or old vessels. Such a blow, however, may do no immediate and perceptible damage to a staunch boat, while it may sink an old and infirm one. If tugs undertake to handle canal-boats which are known to be old and weak, they are bound to exercise additional caution in their treatment. On the other hand, owners of such boats are bound to give notice of their infirmities, or else they are not entitled to have them handled with more than ordinary care and prudence. The evidence in regard to this boat shows clearly that she was an old boat. The libelant bought her as such in exchange for another old one, paying also, in addition, $100 in cash and his note for $40. On account of alleged misrepresentations by the seller, the libelant subsequently refused to pay the note, and it was surrendered. She was not rated; but this circumstance is not conclusive that she was not ratable for insurance, since not unfrequently good boats of this class are run without insurance. A ship-carpenter, on behalf of the claimant, examined the Kearsage while she was being repaired, and while the broken planks were being taken from her side. He testifies that the planks removed were rotten, so that they could be broken by the hand. The carpenter who did the repairs testified shortly before the trial that the broken planks were sound and in good condition, and that the general condition of the planking of the boat was sound and seaworthy. This latter testimony was given some three years after the transaction; the former, near to the time of it.

It is difficult to form any satisfactory conclusion from evidence of this character. Had the claimants intended to rely upon the fact of such utter rottenness and unseaworthiness as should preclude the Kearsage from any recovery, additional means of supporting their case in this respect should have been procured. At the same time, I am by no means satisfied, upon the circumstances of this case, that this canal-boat was of the ordinary strength or ability to undergo the usual handling of staunch and sound boats. The natural inference from all the facts is that she was not. I think this is confirmed by the captain's calling out to the pilot when he saw that they were going to run against the pier. This was too late, however, to be of any avail. Had seasonable notice of the weakness of the boat been given, doubtless the pier and the spiles would have been avoided, or struck more cautiously, and no injury have ensued. Justice requires that the continued running of old boats should be closely scrutinized, and their owners should not be suffered to conceal their infirm condition, and, when accidents happen, get them repaired, or recover as for a total loss, at the expense of others. *The Bordentown*, 16 FED. REP. 270. The owner is bound to give notice of any infirmity about his boat, if she be not staunch and strong; and where this is

not done he must be held jointly or solely responsible for such injuries as the present, according to the other circumstances of the case. No such notice was given in this case. Had the contact with this pier been only such as was clearly justifiable in the case of ordinary boats, the libel would therefore have been dismissed. *The Gen. Geo. G. Meade,* 8 Ben. 481. But as I must hold otherwise, upon the evidence, both must be regarded as in fault, and the libelant is entitled to recover but half his damages, (*The William Murtaugh,* 3 FED. REP. 404; *Christian* v. *Van Tassel,* 12 FED. REP. 884, 890,) amounting, upon the testimony before me, with interest, to $105, with costs.