### THE GYPSUM KING.

(District Court, D. Massachusetts. March 25, 1922.)

#### No. 1914.

Towage ⬳12(2)—Barge held at fault for proceeding in unseaworthy condition, and tug for towing too fast under the circumstances.

On libel to recover for the sinking of a barge, the barge *held* at fault for proceeding to sea heavily loaded while in an unseaworthy condition, without informing the tug of its condition, and the tug *held* at fault for towing the barge at a speed of 8 or 9 miles an hour in a heavy sea, knowing she was not in good condition, so that the libelant can recover divided damages.

In Admiralty. Libel by Fields S. Pendleton against the steam tug Gypsum King to recover damages for the sinking of a barge while in tow of the tug. Decree rendered for divided damages.

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

E. E. Blodgett and Blodgett, Jones, Burnham & Bingham, all of Boston, Mass., for libelant.

Barry, Wainwright, Thacher & Symmers, of New York City, for claimant.

MORTON, District Judge. This is a libel to recover damages for the sinking of the barge Fortuna, which foundered near Mt. Desert Rock in the early morning of May 9, 1920, while in tow of the Gypsum King. The facts are as follows:

The Fortuna was loaded with plaster rock at Chevirie, N. S., for a voyage to Portland, Me. The loading was done as she lay aground at the dock, in what is said, without contradiction, to have been a good mud berth. The loading was finished on the 3d or 4th of May, and the barge was taken out and anchored a few miles down the bay. In taking her out, part of the shoe stuck in the mud, and was pulled off and left in the dock. The barge lay at anchor for about six days, and then was taken in tow by the Gypsum King, at about 8 a. m. on May 8th, for the voyage down the coast. Towards evening the tow reached the mouth of the bay. On May 7th there had been a strong southerly gale, and a· heavy undersea was still running, but otherwise weather conditions were good. The tug, which is very powerful, took a speed of 8 or 9 miles an hour, with the barge on a hawser about 225 fathoms long. During the afternoon the speed was for a time reduced—it is disputed whether because of distress signals from the barge or because of fog; the barge claiming the former and the tug the latter. During the early part of the night the tug again took full speed, which would seem to indicate that the slowing was because of temporary fog. At midnight the tug was concededly at full speed. About 1:45 a. m. on May 9th distress signals were heard from the barge, which called on the tug to slow down, and it was observed that the barge appeared to be in distress. The tug immediately put her engines on dead slow, moving just enough to keep clear of the hawser. Shortly afterward the barge sank. The tug picked up the lifeboat containing the barge's crew.

The barge claims that the accident was due to too fast towing by the tug, which buried the barge in the sea and strained her, and eventually caused her to founder. The tug claims that the barge was leaky and unseaworthy, and for those reasons sank while being properly towed.

The Fortuna was built in 1883 as a three-masted schooner. She had been converted into a· barge some years before the accident. Only one witness testified on her behalf—her captain, Pendleton. His evidence is that the barge was in every way staunch, tight, and seaworthy, and sank only because she was dragged under so hard by the tug that she was strained and foundered. On Pendleton's testimony, however, only two distress or warning signals were given by the barge to the tug, one in the afternoon and the other just before she sank, and each was promptly heeded. Capt. Pendleton's testimony as to the seaworthiness and tight condition of the barge is contradicted at one point or another by Mr. Parsons, by Mr. Ross, by Capt. Berry and by Mr.

Lake. Each of these witnesses testifies to facts showing that the barge was leaky or unseaworthy, or both, or to statements that she was leaky by Capt. Pendleton. Capt. Pendleton is forced into the position of denying conversations which some of these witnesses testify that they had with him, and disputing facts which others of them say they observed in regard to the barge. Mr. Parsons, for instance, who appears to be a responsible and disinterested witness, testifies that Pendleton said to him that the barge was leaky, but could be kept afloat by her pumps. Lake testifies that he shipped on the barge at Chevirie as cook, but from what he heard and saw regarded her as leaky and unseaworthy, and left her. Capt. Baird, of the tug Mumford, testifies that he was ordered to take either the Fortuna or another barge lying with her to Portland; that he meant to take the Fortuna, because she was the lighter, and ran alongside her for that purpose; that his attention was attracted by a bad-looking hatchway, so he went aboard and made an inspection; that he found holes in her forward deck, and her general condition such that he regarded her as unseaworthy; that he declined to tow her, and took the other barge. Parsons, Ross, and Lake have no interest whatever in the controversy, and no sufficient reason is suggested why they should falsify. The weight of the evidence clearly is that the barge was not tight or seaworthy at the commencement of the voyage, and I so find.

The Gypsum King towed the Fortuna at a very high speed—about 8 or 9 miles, on her own testimony—a speed which would only be safe and proper with an able barge under favorable conditions, and which was wholly unsuitable for an old barge under such conditions of sea as actually prevailed. It cannot be doubted that towing at a high speed in a heavy sea imposes severe strain on the towed vessel. It was primarily the business of the captain of the barge to give warning when her safety was threatened. If the speed was so great that the barge was being strained or buried, he should have informed the tug. On his testimony the warning given in the afternoon was promptly heeded; and it ought to have been repeated when the tug picked up speed, if it was dangerous to the barge for her to do so. It seems probable that one of the pumps of the barge gave out, and that its failure caused her to sink much sooner than would otherwise have been the case. On all the evidence the barge seems to me to have been at fault for undertaking the voyage in an unseaworthy condition, without express notice of that fact to the tug, and for the failure of her captain to warn the tug of the effect which the high speed was having upon her; and I so find.

On the other hand, while the tug was not fully advised of the unseaworthy condition of the Fortuna, her master knew that the Fortuna was an old vessel, not originally built for towing. He testified before the steamboat inspectors that he examined the Fortuna before leaving Spencer's Island. "I did not find conditions very good," he said, "She didn't look very good to me. I asked the captain about her condition; he stated that she was in perfect seaworthy condition, and that he had towed her around Hatteras several times that way; so I told him I would give him my hawser and start with her. * * * She

didn't appeal to me as though she was in a seaworthy condition. * * * I says (to the barge captain), 'This barge don't look good to me at all.' * * * She was loaded very deep."

It was the duty of the master of the tug to exercise the care of a prudent and skillful navigator with reference to the vessel which he had in tow, and to make allowances for her weaknesses as far as he was informed of them. He ought to have known that an old, deeply laden vessel like the Fortuna would not stand being towed at a speed of 8 or 9 miles in heavy on-coming seas, and that to do so would be very likely to strain her and open her seams. Capt. Pendleton, master of the barge, testified, "And, by gracious, he really towed us all to pieces"—which seems to me nearer the fact than some of his other testimony. The tug was at fault for excessive speed.

The accident was caused, therefore, by the fault of the barge in going to sea in a condition unsuitable for the voyage, and in failing to warn the tug that she was being imperiled by the speed taken, and by the fault of the tug in towing the barge at an excessive and dangerous speed, considering the sea and the condition of the barge, as the tug's master knew it to be. The last two faults were concurrent, and both entered into the accident. The case is very similar to The William Murtaugh (D. C.) 3 Fed. 404, in which the tug undertook to tow a canal boat with uncovered hatches across New York Bay in a fresh wind, with the result that the canal boat filled and sank. The captain of the canal boat did not remonstrate against the undertaking. Judge Choate held both the tug and the canal boat at fault. In the Bordentown (D. C.) 16 Fed. 270, Judge Brown said:

"This court has repeatedly held it negligence in both the owner and the tug to proceed on a voyage with a tow known to both to be unfit to encounter the hazards of the trip."

In that case, although recognizing the admiralty practice to scrutinize closely claims on behalf of old vessels, Judge Brown allowed the recovery of one-half damages. And he reached the same conclusion in the Syracuse (D. C.) 18 Fed. 828, where an old canal boat was lost, saying:

"If tugs undertake to handle canal boats which are known to be old and weak, they are bound to exercise additional caution in their treatment."

Let there be a decree for divided damages.