## SOUTHGATE v. EASTERN TRANSP. CO.

## THE DIRECTOR.

Circuit Court of Appeals, Fourth Circuit.
July 5, 1927.

No. 2596.

**1. Towage** ⬙12(1)—**Vessel, seeking towboat's services, represents that it is seaworthy for voyage anticipated, and tug may assume that it will carry competent and sufficient crew.**

A vessel, seeking services of towboat, holds itself out to be sufficiently staunch and strong or seaworthy to withstand ordinary perils of the sea to be anticipated on a voyage, and a tug has the right to assume that the tow will carry a competent and sufficient crew, and is not liable for damages from unseaworthy condition of barge, or for failure of owners to properly man and equip.

**2. Towage** ⬙4—**Tug is not insurer of tow, nor liable as common carrier, though charged with duty of exercising reasonable care for safe-keeping of tow.**

Tug is not insurer of safety of tow, nor has it the obligation of a common carrier, though it is charged with the duty of exercising reasonable and ordinary care for the protection and safe-keeping of the tow intrusted to it.

**3. Towage** ⬙15(2)—**Accident to tow does not raise presumption of negligence of tug, burden of proof thereof being on person asserting liability.**

The happening of an accident to a tow does not of itself raise any presumption of negligence on the part of the tug, burden of proof of tug's negligence being on person asserting liability therefor.

**4. Towage** ⬙11(1)—**Towage contract requires only exercise of degree of caution and skill which prudent navigators would employ.**

Towage contract requires no more than that one undertaking service shall carry out his undertaking with degree of caution and skill which prudent navigators usually employ in similar services.

**5. Towage** ⬙12(1)—**Tug held not liable to barge, anchoring after hawser broke, for losses incident to violence of storm or necessity of casting off anchor.**

Tug towing barge, which was compelled to anchor when hawser broke during storm, which did not return to barge until second day thereafter, when weather had abated, *held* not liable to barge for losses sustained incident to violence of storm, or from necessity of casting away anchors due to failure of hoisting equipment to operate.

**6. Towage** ⬙12(1)—**Tug held not liable to barge, not properly manned and equipped, for losses from drifting and stranding after anchoring during storm.**

Where one of two barges, compelled to anchor when tug's hawser broke during storm, was improperly manned and equipped, and failed to properly anchor, *held*, tug was not liable for damages to barge caused by its drifting and stranding, notwithstanding failure to return to scene before weather abated.

**7. Towage** ⬙6—**Tug held not entitled to recover of tow for loss of tow rope parting during storm.**

Tug *held* not entitled to recover of barges in tow for loss of tow rope, which parted during storm.

**8. Towage** ⬙6—**Tug held entitled to compensation for towage services rendered barge, notwithstanding delay incident to storm and stranding of second barge.**

Where tug, after abatement of storm which had caused its hawser to break and necessitated anchoring of barges in tow, returned and completed trip with one barge, the other having broken away from its anchor and stranded, *held*, tug was entitled to compensation for towage service rendered the barge which it delivered.

Cross-Appeals from the District Court of the United States for the Eastern District of Virginia, at Norfolk; D. Lawrence Groner, Judge.

Libel by the Eastern Transportation Company against the tug Director, wherein T. S. Southgate, owner and claimant of the tug, filed a cross-libel. From a decree for libelant for part only of recovery sought, libelant appeals, and respondent cross-appeals. Affirmed in part, and reversed in part.

John W. Oast, Jr., and R. Arthur Jett, Jr., both of Norfolk, Va. (Kelsey & Jett, of Norfolk, Va., on the brief), for appellant and cross-appellee.

Edward R. Baird, Jr., of Norfolk, Va. (Baird, White & Lanning and George M. Lanning, all of Norfolk, Va., on the brief), for appellee and cross-appellant.

Before WADDILL, PARKER, and NORTHCOTT, Circuit Judges.

WADDILL, Circuit Judge. These are cross-appeals in admiralty from a decree of the United States District Court for the Eastern District of Virginia, at Norfolk, and involve the liability for losses sustained by the Eastern Transportation Company, incident to the enforced anchorage of the barges James M. Hudson and E. R. Haggett near the entrance to the Virginia capes during a storm.

The two barges, both ocean-going vessels, light, were in tow of the ocean-going tug Director, en route from Delaware Breakwater to Norfolk, at the agreed sum of $150 for each barge. The tug and tow left the Breakwater on the early morning of December 31, 1924, at which time the weather conditions

appeared favorable, and so continued until about noon of that day, when the wind increased, and continued to do so until that night, reaching the proportions of a gale. About 1:30 o'clock on the morning of January 1st, when the tug and tow were about two miles past Cape Charles Light vessel, the hawser between the tug and the head barge, the Hudson, parted. The tug thereupon immediately signaled to the barges to anchor, which they did, and upon finding them resting safely, as was believed, the tug proceeded to Norfolk; it being impracticable for her to do anything to aid the barges in the then weather conditions, particularly as she had lost her hawser, which was attached to the Hudson. The tug, about 6:30 a. m. on January 1st, arrived in Norfolk, and during that day informed the Eastern Transportation Company's agents of the anchoring of the barges, which they did not consider to be in a position of imminent peril.

On the 2d of January the tug, upon the moderation of the weather, proceeded to secure the barges and bring them into port, and late in the evening of that day found the Hudson lying safely at anchor, where she had been left on the morning before, but the Haggett had disappeared. Upon speaking the Hudson, and finding her in no immediate danger, the tug set out to look for the Haggett, and about 5:30 p. m. of January 2d sighted her stranded off Fortieth street, Virginia Beach, whither she had drifted about 12:30 that morning. On January 3d, the weather having further moderated, the tug went out again for the barges, and received the Hudson from one of the Coast Guard cutters, and towed her into Hampton Roads, and later the Haggett was floated and brought in by its owners.

The libel was filed on the 16th of March, 1925, by the Eastern Transportation Company, claiming damages to the two barges of $35,000. The claim was based upon the alleged negligence of the tug in abandoning its tow, and not properly caring for and bringing the same into port; the barges, as claimed, being properly manned, equipped, and seaworthy at the undertaking of the service.

Appellant, T. S. Southgate, as owner and claimant of the tug, answered, and denied all liability for the stranding of the barges, and the damage sustained by them, and urged that whatsoever damage befell them was such as was incident to perils of the sea, and that the proximate cause—certainly so far as the Haggett was concerned—was her unsea-worthiness, and that she was not properly equipped and manned for the service required. The Haggett, at the time of anchoring her, had on board only her master and his wife and a small child, and so cast overboard his anchors that they fouled, and that only one, instead of both, anchors held at the same time. Appellant, Southgate, also filed his cross-libel, setting up damages in the sum of $850 for the loss of his hawser by the Hudson, and the further sum of $150 for towage due by the Hudson.

Much testimony was adduced by the parties in support of their respective contentions; the contest between them in the last analysis being that the Transportation Company sought to place the entire liability upon the tug, as well for damages incident to the losses sustained by the Hudson, as the result of the violence of the storm to which she was subjected, as for the very serious loss and damage sustained by the Haggett. The tug owner, on the other hand, urged its entire freedom from fault for the losses to the barges, and insisted that the Eastern Transportation Company owed the tug for the loss of its hawser and for the towage money.

The learned judge of the District Court, after full consideration of the entire testimony, exonerated the tug from liability in connection with the Hudson, and held that the Haggett sustained damages to the extent of $15,000, and that the tug was liable for one-half thereof, in that its action in failing to return to the barge on the morning of the 1st of January, and in failing earlier to notify the Transportation Company and the Coast Guard of the situation of the barges, were "contributing and concurring" acts of negligence affecting the stranding of the barge Haggett, and that the Haggett's unseaworthy condition, as well as her failure to have a sufficient and competent crew, were also contributing and concurring causes to her stranding, which prevented her recovery for one-half of the damage sustained by her; and the court likewise dismissed the cross-libel filed by the appellant, Southgate, which denied to the tug the right of recovery for the loss of her hawser and her towage of the Hudson.

From this action of the court the appeal and cross-appeals were taken. The assignments of error are elaborate and many in number, setting forth in considerable detail the respective contentions of the parties. Without entering into a general discussion of them, it may be said that the four grounds last above stated cover the rulings of the

court to which exceptions were taken; that is: Did the trial court err in exonerating the tug from liability for the losses of the Hudson? Was there error in holding the tug liable for half of the losses sustained by the Haggett? Was there error in exonerating the Haggett from liability, either in connection with the losses directly arising or in its conduct, or from those "contributing and concurring" in connection therewith? And, should the cross-libel of Southgate have been dismissed?

[1] The law properly controlling, determinative of the questions thus presented, is too well settled to admit of serious controversy, or to require extensive citation of authority. A vessel, seeking the services of a towboat, holds itself out to be sufficiently staunch and strong—that is, seaworthy—to withstand ordinary perils of the sea to be anticipated on a voyage; and a tug has also the right to assume that the tow will carry a competent and sufficient crew, and is not liable for dangers, either from the unseaworthy condition of the barge or for the failure of its owners to properly man and equip the same. The Syracuse (D. C.) 18 F. 828; The Edmund L. Levy (C. C. A.) 128 F. 683.

[2] The duty of a tug to its tow is likewise well understood. The tug is not an insurer of the safety of the tow, nor is there imposed upon it the obligation of a common carrier; but it is charged with the duty of exercising reasonable and ordinary care for the protection and safe-keeping of the tow intrusted to it, and should faithfully and diligently discharge its undertaking, omitting nothing that could reasonably be required of it that would tend to lessen hazards and dangers to the tow.

[3, 4] The happening of an accident to a tow does not of itself raise any presumption of negligence on the part of the tug; and the burden of proof is upon the party seeking to charge the tug with liability therefor. The towage contract requires no more than that one who undertakes the service shall carry out his undertaking with the degree of caution and skill which prudent navigators usually employ in similar services. The J. P. Donaldson, 167 U. S. 599, 603, 17 S. Ct. 951, 42 L. Ed. 292; The Atlantic City, 241 F. 65 (C. C. A. 4th Cir.); The Dempsey, 279 F. 94 (C. C. A. 4th Cir.); The Ashwaubemic, 3 F.(2d) 782 (C. C. A. 4th Cir.); The E. Luckenback (D. C.) 109 F. 487, affirmed (C. C. A.) 113 F. 1017; The Garden City (C. C. A.) 127 F. 298; The Britannia (D. C.) 134 F. 948, 952; The Blue Bell (D. C.) 189

F. 824; The E. V. McCaulley (D. C.) 189 F. 827; Hughes, Adm. (2d Ed.) pp. 129, 130.

Reference has been made to the decision of this court in Re Dempsey, 279 F. 94, supra, as bearing upon the duty and obligation of a tug to its tow when cast adrift. We have examined that case with care, and do not desire to depart from anything therein stated, especially as to the duty and care imposed upon a tug to its tow cast off in a storm; but the facts of that case are so unlike those here as not to make its decision of controlling importance in reaching a just and correct conclusion in this case.

Counsel for libelant and cross-appellee have presented their case with much force and ability, and we have given careful consideration to the authorities cited by them, among them The Richard F. Young (D. C.) 245 F. 499, The Cahill (C. C. A.) 124 F. 63, The Betty (D. C.) 278 F. 220, 222, Atkinson v. Scully (D. C.) 246 F. 463, The Gypsum King (D. C.) 279 F. 297, and The Scow Grandpa (C. C. A.) 6 F. 362, A. M. C. 1925, 486, 489 as we have fully considered the cases bearing especially upon the proximate cause of the Haggett's stranding, The Harrison (D. C.) 283 F. 699, A. M. C. 1927, 163, 164; The Nanticoke-Sea King (D. C.) 14 F.(2d) 684, A. M. C. 1926, 802, 806; The M. D. Wheeler (D. C.) 100 F. 859, and are convinced that the authorities do not warrant our reaching a conclusion different from the one herein announced, upon the facts and circumstances of this case.

[5] First. Was there error in exonerating the tug from damages for the barge Hudson? We think clearly not. The judge of the District Court decided that the Hudson, with its two anchors, having withstood and ridden out the storm, was only what was contemplated in the contract of towage, and that while serious losses were sustained by the Hudson, incident to the violence of the storm, among other things the necessity for casting away its anchors upon the abatement of the weather conditions, to enable the movement of the barge, still that such losses were attributable to the storm, and were hazards and perils of the sea for which the tug was not responsible; the necessity for casting away the anchors having arisen, not from any fault or lack of diligence on the part of the tug, but by reason of the steam-hoisting equipment on the barge failing to operate, and that there was no negligence on the part of the tug, so far as the Hudson was concerned, arising either from the loss of the anchor chains or

other fixtures and appliances, in the entire venture.

[6] Second. The propriety of the court's ruling in ascertaining the damages sustained by the Haggett and determining the liability therefor presents a more complicated question for solution. . The learned judge of the court below was of opinion that the damages to the Haggett should, as between that vessel and the tug, be divided; that is, that the negligence of the tug and the barge in respect to the Haggett's losses arose because of the "contributing and concurring negligence" of each vessel, and accordingly so decreed—the court being of opinion that the action of the tug in its failure on the morning of January 1st to return from Norfolk to the anchored barges, and to earlier notify the transportation Company and the Coast Guard of the situation of the barges, constituted an act of contributing and concurring negligence on its part, so far as the Haggett was concerned, and that the tug was liable for one half of the damages sustained by it.

We can but feel that the court erred in this holding. The testimony clearly convinces us that no good could have been accomplished by the return of the tug to the scene of the anchorage on the 1st, had it been prudent or practical so to do, and as a matter of fact, in the circumstances, we think the tug was justified and warranted in not returning to the barges on that day. Had the tug done so, no practical good would have been accomplished; as, aside from the impossibility of the venture by reason of the then weather conditions, the Haggett because of its defective and insufficient anchors and equipment, together with the shortage in its crew, could not have been saved from the disaster which befell it.

The learned judge of the District Court was of the opinion that the Haggett was not properly equipped and sufficiently manned, being navigated alone by its master, with such assistance as his wife could render, and should have had at least two seamen besides, and that the barge should have been held on two anchors, instead of one, as were all the other barges of the like class in the immediate vicinity, all of which held, nevertheless considered that these causes, singly or combined, were not the proximate cause of the disaster.

The Haggett first put out its port anchor about 2 a. m. on the 1st of January, which held for about two hours only. About 4 a. m. the chain parted, and its starboard anchor was let go. It held until 3 p. m. of the 1st, when it also parted. A kedge anchor was then rigged up and put out on a rope hawser, which, after the barge had considerably drifted, took hold and held until about 10 p. m. when it parted, and the barge continued to drift. The tug did return to the barges on the morning of the second day, and upon speaking the Hudson and finding her in no immediate danger, though the weather was still severe, started out to look for the Haggett, and about 5:30 p. m. sighted her off Fortieth street, Virginia Beach, whither she had drifted and grounded on the 2d about 12:30 a. m. Four other barges of the class of the Haggett, anchored in the immediate vicinity, and under substantially the same conditions, all upon two anchor chains, withstood the storm, as would doubtless the Haggett, had it been placed upon two anchors, which were necessary in the prevailing weather conditions.

Assuming that the tug could have safely returned to the Haggett on the 1st of January, which the evidence does not support, in our judgment, still it could have rendered no effective or efficient service to her, drifting under its several single anchors, as stated, and it should not be held liable for the losses to the barge, or any part thereof.

Considering the right of the recovery by the Haggett against the tug for losses sustained by it, and its liability in part for such losses, by reason of its contributing and concurring negligence, we are likewise unable to concur with the District Court in respect thereto. We have given our reasons why the tug is not liable for such losses, and, so far as the Haggett has sustained damage, our conclusion is that she should be denied the right of recovery against the tug for any amount, because of her failure to properly equip and man and skillfully navigate the barge; and we are further of the opinion that her acts of omission—that is, her unseaworthiness and lack of a sufficient crew and prudent navigator—in the respects mentioned were not merely contributing or concurring faults, but constituted the proximate and efficient cause of the disaster. The Sunnyside (C. C. A.) 251 F. 271; The M. E. Luckenbach (D. C.) 200 F. 630; The Panther (C. C. A.) 5 F.(2d) 64.

[7, 8] Third. This brings us to the consideration of the court's action in refusing to entertain appellant's cross-libel, whereby recovery was sought for the loss of the tug's tow rope by the barge Hudson, as well as for the towage service rendered said barge. Our conclusion is that the District Court correctly

rejected the claim for the tow rope, as the same was a loss incident to the safe and successful transportation of the tow, and that in this respect its action should be affirmed, but that the tug should have been allowed for its towage service, as the same was rendered, and in that respect its action should be reversed.

Upon the whole case, for the reasons stated, we are of opinion that the action of the District Court should be reversed, and modified in the respects mentioned, and at the cost of the Eastern Transportation Company.

Reversed.