THE EDWARD W. PARKHILL.

THE NEW YORK MARINE NO. I.

JEFFERSON et al. v. TICE TOWING LINE, Inc.

No. 7856.

District Court, E. D. New York.
Oct. 29, 1931.

Macklin, Brown, Lenahan & Speer, of New York City (Carl F. Vander Clute, of New York City, of counsel), for libelants.

Park, Mattison & Lynch, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for Tice Towing Line, Inc.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (P. Fearson Shortridge, of New York City, of counsel), for the New York Marine No. 1.

GALSTON, District Judge.

On April 24, 1925, the barge Edward W. Parkhill was loaded and taken in tow at South Amboy by the tugs Authentic and Numatic, operated and controlled by the respondent, Tice Towing Line, Inc., and while bound for New York, going up the Kills, the barge was struck by collision with the tow of the New York Marine No. 1, and sustained damage as a result of the collision.

In addition to the testimony of the owner of the barge, the libelants rely on certain admissions in the answers of the respondent and the claimant. In paragraph fourth of the answer of the Tice Towing Line, Inc., admission is made that the barge Edward W. Parkhill, while in tow of the tugs owned by the respondent, came into collision with the tow of the steamtug New York Marine No. 1; and paragraph eighth of the answer of the Tice Towing Line, Inc., is as follows: "Eighth: About 5:30 A. M. on April 24th, 1925, the steamtugs Authentic and Numatic owned by this respondent, were proceeding up Staten Island Sound from South Amboy bound to New York, with a tow of seven boats on two hawsers. The tide was strong flood and running with the Authentic's tow. The Authentic, Numatic and the boats in tow had regulation lights set and burning. When approaching Tufts Point at Chrome, New Jersey, the steamtug New York Marine #1 was observed approaching with a hawser tow of light boats close to the Staten Island side of the channel and heading to pass the Authentic and her tow starboard to starboard. The Authentic having a fair tide, continued on holding as close as possible to the Jersey shore, expecting that in accordance with the usual custom the New York Marine #1 would stop and permit her to pass in safety. However, the New York Marine #1 did not stop but continued on and brought her tow into collision with the barge Parkhill which was the starboard boat in the last tier of the Authentic's tow."

The answer of the claimant, the New York Marine Company, contains the following allegation: "Fourth: Claimant admits that about 5:30 A. M. April 24, 1925, the starboard boat in the last tier of a tow in charge of tugs owned, operated and controlled by respondent, Tice Towing Line, proceeding up the Arthur Kill, as a result of careless and negligent operation of said tugs, came into collision with the starboard hawser boat of the tow of New York Marine No. 1, bound down the Arthur Kill, while the tows were passing each other in the vicinity of Rossville, Staten Island.

Claimant denies that said collision was caused or contributed to by any fault or negligence on the part of tug New York Marine No. 1 or those in charge of her and denies any knowledge or information sufficient to form a belief as to the other allegations of the fourth article of the libel."

Then in paragraph eighth thereof it contains the allegation: "The tows approached each other to pass safely starboard to starboard."

Now the question is, admitting the damage, Was either the respondent or claimant or both responsible therefor?

It is argued on behalf of the Tice Towing Line, Inc., that the White City (C. C. A.) 48 F.(2d) 557, is authority for the proposition that no presumption of negligence may arise from the mere fact of the delivery of the tow in damaged condition. Undoubtedly that is the law of that case, and there is no such presumption working against the Tice Towing Line herein; and if the libelant had shown nothing but a damaged boat, without testimony as to how the damage occurred, there would be no burden, under the authority cited, for the Tice Towing Line to meet any presumption.

But what the Tice Towing Line must meet is not presumption, but inference arising out of the proofs. Now the proof is that there was a collision, and that in a narrow channel the tugs of the respondent were proceeding along the wrong side, and endeavored to effect a starboard to starboard passage with the on-coming tow.

The respondent, Tice Towing Line, offered no proof or made no explanation of why it was seeking a starboard to starboard passage, save that it alleges in the answer, which was offered as an exhibit by the libelant, that the Authentic had a fair tide. Certainly that is not enough proof to establish the exception to the Narrow Channel Rule (article 25, Inland Rules). That rule and the exceptions read as follows:

"Art. 25. In narrow channels each steam-vessel shall, when it is safe and practicable, keep to that side of the fairway or mid-channel which lies on the starboard side of such vessel."

"Art. 18, Rule 1. * * * But if the courses of such vessels are so far on the starboard of each as not to be considered as meeting head and head either vessel shall immediately give two short and distinct blasts of her whistle, which the other vessel shall answer promptly by two similar blasts of her whistle, and they shall pass on the starboard side of each other."

"Art. 27. In obeying and construing these rules due regard shall be had to all dangers of navigation and collision, and to any special circumstances which may render a departure from the above rules necessary in order to avoid immediate danger."

It may very well be that the tug Authentic could justify its course and maneuvers, but no such effort was made at the trial. I think that the libelant had established sufficient to cast the burden of going forward on the respondent, to meet not the presumption, but the inference arising from the proofs, that the damage was caused by its own negligence.

Now as to the claimant: Here, too, the New York Marine No. 1 was headed on the wrong side of the channel. No evidence is offered by it to bring it within the exceptions noted in the Narrow Channel Rule referred to. I think the burden of doing so clearly was shifted to the claimant, and that, having failed to meet that burden, the claimant is likewise liable for the damage sustained. See The Kinetic (C. C. A.) 40 F. (2d) 258.

Both respondent and claimant rely on the L. P. Dayton, 120 U. S. 337, 7 S. Ct. 568, 574, 30 L. Ed. 669. It seems to me that the case at bar is distinguishable from the Dayton Case. The respondent in that case denied the collision. In this case, the fact of collision is admitted by both respondent and claimant.

In the Dayton Case, the court said: "In some cases the facts of the collision, as admitted in the pleadings, might constitute a prima facie case of negligence, which would impose upon the tug the duty of explanation and exoneration; but no such presumption of fault arises in the present case."

In the case at bar, it seems to me that the violation of the Narrow Channel Rule does raise a presumption of fault, at least to the extent of requiring explanation by the respondent and the claimant as to why they sought to pass starboard to starboard.

I hold both liable.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.

Settle decree on notice.