[Civ. No. 9407. First Appellate District, Division One.—December 18, 1935.]

SAN FRANCISCO BRIDGE COMPANY (a Corporation), Respondent, v. THE CHARLES NELSON COMPANY (a Corporation) et al., Appellants.

686

Irving H. Frank, Nathan H. Frank and L. C. Gay for Appellants.

Lillick, Olson, Levy & Geary and Theodore M. Levy for Respondent.

WARD, J., *pro tem.*—This is an appeal from a judgment in the sum of $12,500 awarded by a jury in an action to recover damages for the loss at sea of plaintiff's floating derrick barge and property stowed thereon, which was under tow of one of defendant company's steamships from the port of Los Angeles to the port of San Francisco. The appeal is based upon errors of law in the rulings and instructions of the court. For the sake of brevity the steamship will be referred to as the "Griffdu" and the barge as "Number 31" or as "the barge".

The only alleged error relative to the admission of evidence was the trial court's refusal to permit defendants to introduce a certain letter directed to the plaintiff, written upon the stationery of the Charles Nelson Company, one of the defendants, signed by J. Michaelsen, connected therewith, and accepted on behalf of plaintiff by Fred R. Muhs. The body of the document reads as follows:

"We hereby confirm arrangement to furnish motor power to tow your Barge No. 31 from San Pedro to San Francisco Harbor, delivered to our steamer by tug for your account. We are to drop the barge at San Francisco Harbor to be picked up by tug here for your account.

"We understand your barge will be ready for the venture on June 17th, 1929, subject to your judgment of weather conditions indicating the probability of a safe tow."

(The following paragraph is pasted on over the original paragraph of the letter: "In case of foundering or burning at sea the amount to be paid shall be an amount proportional

to the tow which had been completed; that is, the towage fee would be pro-rated as to the time in transit; in case of loss as above.'')

''The tow service is to be entirely at the risk of the tow and the Steamer 'Griffdu' and her owners take no risk or responsibility whatsoever for the safe towage of the said tow, and agree solely and only to furnish the motor power.

''The charge for this service is to be $500.00.''

The original arrangements for the towage of the barge were made verbally by the president of the defendant company and the vice-president of the plaintiff company. The instrument in writing was simply a confirmation of such arrangements. That the barge was to be towed from San Pedro to San Francisco, that delivery was to be made to and received from the ''Griffdu'' by the plaintiff, that the barge should be ready for tow on a certain date, and that a *pro rata* hire was to be paid in case of foundering or burning at sea, which seems to have been subsequently paid, were all facts admitted in the pleadings or presented as stipulated evidence in the trial of the case. The provision relative to ''weather conditions indicating the probability of a safe tow'' subject to the judgment of plaintiff was immaterial in so far as the admissibility of the letter was concerned, for the reason that the evidence showed that the weather was calm when the ''Griffdu'' ''picked up the barge'' and commenced the tow. This leaves the written instrument with only the following pertinent provision: ''The tow service is to be entirely at the risk of the tow and the Steamer 'Griffdu' and her owners take no risk or responsibility whatsoever for the safe towage of the said tow, and agree solely and only to furnish the motor power.'' The motor power was a necessary adjunct to towing the barge, but when defendants sought to so limit their responsibility that they would not be liable for their own negligence, they incorporated a provision in the instrument which was opposed to public policy and therefore illegal and void. In *The Somers N. Smith*, 120 Fed. 569, a contract provided: '' . . . the owners of the tug were to furnish simply the motive power to propel the tow, and to be in no way responsible for her navigation''; and the court held (page 576): ''In the opinion of the court, even if the contract claimed by the owners of the tug had been established, it would not relieve the tug nor her owners from the negligence of the tug or her

crew.'' (*Compania de Navegacion* v. *Fireman's Fund Ins. Co.*, [*The Wash Gray*] 277 U. S. 66 [48 Sup. Ct. 459, 72 L. Ed. 787] ; *The Jonty Jenks*, 54 Fed. 1021 ; *The Skagway*, 1925 Am. Mar. Cas. 1133.) Appellants seek to distinguish the terms of the letter in this case with the communications and contracts in the cases last cited by pointing out in their brief that the letter in this case does not embody a stipulation against negligent towage, but only against responsibility for the condition of the barge and its ability to withstand the perils of the voyage. Appellants contend that the letter was admissible to determine the duties resting upon the towing vessel, and that there is in the contract letter an element of ambiguity susceptible of explanation. The agreement to tow was prepared by appellants and there should be no ambiguity in expressing any stipulation in reference to protecting appellants against loss. The letter contains no provision with respect to the condition of the barge or its ability to withstand the voyage, and it does not outline and limit the extent and character of the duties devolving upon the towing vessel. The citations submitted by appellants are therefore not in point. The stipulations contained in the letter include a void provision and admitted facts. It was not contemplated by either party that the tower would not be responsible for his own negligence. (*Wooden* v. *Austin*, 51 Barb. (N. Y.) 9 ; *Wells* v. *Steam Navigation Co.*, 8 N. Y. 375.) ''If the point to prove which the evidence is competent can just as well be proven by other evidence, . . . the trial judge might well be justified in excluding it entirely . . . '' (*Adkins* v. *Brett*, 184 Cal. 252, 258 [193 Pac. 251].)

Attention is called to a number of instructions wherein it is claimed that the correct rule of law was not stated, or that certain instructions were in conflict with other instructions. These alleged erroneous instructions may be classified as instructions with regard to the determination of the seaworthiness of the tow, instructions with regard to the care required of the towing vessel, and instructions upon contributory negligence. There is considerable repetition in the instructions, and standing alone certain instructions might be construed as misstatements of the legal principles applicable to the facts of this case ; but when one instruction is read in conjunction with others, the true legal problem is unfolded sufficiently clear to enlighten the lay mind upon the law of the case. The

pivotal point around which all of appellants' objections on this score may be urged was the refusal of the court to give defendants' requested instruction number eight, and the use of the words "could" and "should" in the given instructions in reference to the ascertainment of the weakness, if any, of the barge. The word "could" as used simply stated to the jury that the master of the towing vessel was bound to notice the obvious defects, or such defects as the master was capable of ascertaining with reasonable diligence in the exercise of due care.

The refused instruction number eight read as follows: "The owner of the barge, when it offered her for towage to San Francisco, represented her to be seaworthy and fit for the voyage. If the barge was unfit for the voyage, and her unseaworthiness was not obvious to the master of the 'Griffdu', and was not made known to him, he was required to exercise only that degree of care which is proper and necessary for the management of a sound and seaworthy barge, such as the master had a right to presume her to be." The first portion of number eight was actually given. The remaining portion of the instruction was not entirely accurate. It limited the duty of the master of the towing vessel to conditions only that were obvious. Under the facts of this case such limitation was not in accord with the correct legal rule.

The facts of this case are as follows: The barge was a square ended and flat bottomed vessel designed for harbor work, but of a type similar to other barges that had been towed up or down the coast. There was evidence introduced to the effect that there was nothing about "Number 31" or her structure that would indicate any weakness that would prevent her being towed through the conditions of the weather and the sea which she subsequently encountered on the ocean steamer lane between San Pedro and San Francisco. Respondent obtained from a marine surveyor, who subsequently testified in the case, a certificate that the barge was seaworthy. There was stowed on the barge certain equipage. The master of the "Griffdu" went to the side of the barge and inspected her. Before the tow commenced he was asked if he thought the barge was all ready with respect to the make-up of the tow and the stowage of the material on her, and he replied, "She will go all right." At the time the barge left San Pedro there was fuel on board, water in the boilers and a regular

pump and siphon. There was no evidence of leakage. On the morning of the second day of the trip the wind increased and the sea became rougher. The barge was pounding against the seas and shipping considerable water. From the vibration of the ship it appeared that the engines were at full speed. On the afternoon of the second day the wind grew stronger. At this period the barge was lower in the water and had a slight starboard list. The "Griffdu" continued "full speed ahead". It was possible to put men on the barge and "pump her out", but this action was not taken. In the evening the hawser was permitted to run out and the barge cast loose. The "Griffdu" stood by the barge for about ten minutes after the barge was cast loose. Four days later the U. S. Coast Guard Cutter "Shawnee" located the wreck near the passenger steamer lane, bottom up without holes as far as could be ascertained. Unsuccessful attempts were made to tow the wreck to Monterey Bay, so the barge was blown up with mines.

Legal rules applicable to the above facts are as follows: ■ A tow company contracting to tow a barge is liable in damages for failure to fulfill the agreement unless prevented by causes not contributed to by the negligence of the tower. (*Wooden* v. *Austin, supra.*) A tower is not an insurer, and not a common carrier, but is bound to exercise ordinary care in every respect in handling the tow. (*Dameron-White Co., Ltd.,* v. *Angola Transfer Co.,* (C. C. A. 5th Cir.) 19 Fed. (2d) 12.) ■ The tower is not responsible for damages resulting from a deficiency in the condition or structural design of the tow, unless the tower knew or should have known of such deficiency. (54 A. L. R. 133.) ■ If the master of the towing vessel shows lack of such prudence as should be possessed by one of ordinary maritime skill and experience in accepting for towage a barge or other vessel that is obviously unable to make the trip, the tow company is responsible for the master's failure to exercise ordinary care. (*Maryland Transp. Co.* v. *Dempsey,* (C. C. A.) 279 Fed. 94, 98; *The William H. Yerkes, Jr.,* 214 Fed. 881.) The tower is not responsible for the results of accidents occurring through the unseaworthiness of the tow, unless such condition is disclosed or is obvious or should be obvious to the master of the towing vessel. (*Henry Du Bois Sons Co.* v. *Pennsylvania R. Co.,* 47 Fed. (2d) 172.) ■ Ordinarily the owner of a towed vessel guarantees its seaworthiness by offering it for towage, but

if it is obvious that a vessel such as a barge is designed for navigation in smooth waters and not for heavy ocean buffeting, then the master is put upon his guard in the exercise of due care to observe and if necessary to examine the construction and the condition of the vessel to be towed, to ascertain if any weakness or imperfection exists in regard to the constructive condition or the loading of the tow. If imperfections appear or could have been observed and ascertained by the use of reasonable diligence prior to the commencement of a voyage, then the owner of the tow may be relieved of responsibility for the tow's unseaworthiness, unless the owner knew or should have known of the possible faults or imperfections and failed to give notice thereof to the proper representatives of the towing vessel. ■ If the tow is accepted, the tower must consider the type, construction and condition of the towed vessel in regulating the speed of navigation in accordance with the danger that may be confronted. (*The Syracuse,* 18 Fed. 828.) When overtaken by bad weather or choppy seas, the master must take such action as good seamanship may require. (*The William H. Yerkes, Jr., supra.*) ■ If the tow is abandoned except in compelling emergency, the tower must stand by or place himself in the position of responsibility for inexcusable negligence. (*Maryland Transp. Co.* v. *Dempsey, supra.*) Whether a proximate causal relation exists between the loss of the tow and the action of the master of the towing vessel depends upon the facts and circumstances of each case. There is sufficient evidence in the record to justify the implied findings of the jury that in operating at an excessive speed when they observed the damage that occurred appellants were guilty of negligence. Also in failing to exercise due care by slowing the speed or by going into a port of refuge or by pumping out the barge or by failing to adopt any precautionary measures, but, on the contrary, continuing with reckless speed, appellants were guilty of a wilful and wanton act. Under all the circumstances of this case the failure to ''stand by'' after casting the barge adrift seems to be inexcusable.

■ Under the facts as recited and the law as enunciated, we fail to find such conflict in the numerous objections to the instructions heretofore referred to that requires a reversal. There were different theories upon which the jury could return a verdict against appellants. The jury could find that

respondent did not deliver an unseaworthy barge for towage and appellants were liable in damages for negligence. The unseaworthiness of the barge was not a defense unless it caused or contributed to the loss or injury. (63 Cor. Jur., p. 55.) Respondent may have delivered an unseaworthy barge, which fact remotely contributed to the accident. Respondent may have been guilty of negligence, but if thereafter a wilful and wanton act was committed by appellants which was the proximate cause of the loss of the barge, appellants would be liable. To quote *Center* v. *Yellow Cab Co.*, 216 Cal. 205, 207 [13 Pac. (2d) 918]—though the facts are different the legal principle is the same: "The real issue in cases of this character is not whose negligence came first or last, but rather whose negligence, however it came, was the proximate cause of the injury." It was necessary to give instructions covering these various theories. When applied to each theory the instructions were not conflicting.

The complaint alleged that the barge was lost as the result of "carelessness, negligence, gross negligence . . . of the said wilful and wrongful conduct of the defendants". Appellants requested an instruction to the effect that if "the negligence of the plaintiff contributed proximately to the loss of the barge . . . it is immaterial whether the negligence of the defendant was gross or ordinary negligence". No offered instruction attempted to define gross negligence, or to distinguish gross negligence from a wilful and wanton act. ▮
If one party is guilty of negligence in failing to exercise ordinary care to a degree that could be classified as contributory negligence, and a second party, nevertheless realizing the negligence of the first party, commits a wilful and wanton act that results in injury to the first party, the so-called contributory negligence ceases to be a defense for the commission of the wilful and wanton act. (*Girdner* v. *Union Oil Co.*, 216 Cal. 197 [13 Pac. (2d) 915]; *Davies* v. *Mann*, 152 Eng. Reprint, 588, Parke, B.) ▮ Whether plaintiff was guilty of negligence in sending the barge out to meet possible head seas and strong winds and other conditions that might be encountered on the ocean, and whether the defendants by speeding recklessly committed a wilful and wanton act, were questions for the jury to decide, but the proposed instruction as presented could only result in confusing the jurors' minds

upon the issue; namely, were the defendants guilty of a wilful and wanton act.

■ The requested instruction on the subject of bailment was properly refused. A towage, unless the terms of the contract so indicate, does not constitute a bailment. (*Stevens* v. *The White City*, 285 U. S. 195 [52 Sup. Ct. 347, 76 L. Ed. 699].) ■ Whatever supplies or articles are necessarily used or to be used to obtain efficient action during or at the destination of the voyage may be classified as equipment. The equipment was part of the contract, though not mentioned in the letter of agreement, and it does not matter if the equipment was regular or casual or accessory, provided that it was to be used only by the owners of the barge necessarily and exclusively for "Number 31". Part of the equipment was lashed to the deck of the barge and was observed by one of the officers of the "Griffdu".

Certain articles including an orange peel bucket, etc., were suitable for use and had been used on "the barge". Other articles, namely, a Fordson tractor valued at $300, a plow valued at $90, and a scraper valued at $90, were not a part of the regular or accessory equipment of the barge. The amount of the judgment is therefore reduced to the sum of $12,020; and as thus modified the judgment will stand affirmed, respondent to recover its costs of appeal.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on January 17, 1936, and the opinion was modified to read as above; and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 16, 1936.