**THE WOLLASTON.**

**THE BERMUDA.**

District Court, S. D. New York.

April 25, 1945.

Macklin, Brown, Lenahan & Speer, of New York City (Leo F. Hanan, of New York City, of counsel), for libellant.

Bigham, Englar, Jones & Houston, of New York City (Charles A. VanHagen, Jr., of New York City, of counsel), for claimant.

CAFFEY, District Judge.

The action sounds in negligence. The essence of the libellant's statement of its claim is in paragraphs third and fourth of the libel.

At the inception, we should note what is the function of a presumption of negligence. This is well described in Southgate v. Eastern Transp. Co., 4 Cir., 21 F.2d 47. The court made the following

statement (21 F.2d at page 49): "The happening of an accident to a tow does not of itself raise any presumption of negligence on the part of the tug; and the burden of proof is upon the party seeking to charge the tug with liability therefor. The towage contract requires no more than that one who undertakes the service shall carry out his undertaking with the degree of caution and skill which prudent navigators usually employ in similar services."

So also what are the duties of the master of a tug should be kept in mind. A good definition of those duties is given in The Garden City, 6 Cir., 127 F. 298, and The Lizzie D. Shaw, 3 Cir., 47 F.2d 820. The former case has been cited with approval in The Mary T. Tracy, 2 Cir., 8 F.2d 591, 593.

A pertinent description of the position of the master of the tug, contained in The Garden City, 127 F. at page 300, is this: "* * * the test of liability is not the result which occurred, but is whether the master possessed and exercised a reasonable degree of skill and judgment, such as might fairly be expected of a man of his calling in the circumstances in which he was placed. He was bound to this measure of duty, and, if he failed to discharge it, his ship would be responsible for the damages ensuing. But this responsibility is not that of an insurer. Nor is he to be held at fault simply because a disaster or loss has happened, if, being qualified, he has fairly exercised his best judgment in the emergency, and behaved as a prudent man would in similar affairs of his own."

Again, in The Lizzie D. Shaw case, 47 F.2d at page 823, a like thought was expressed in these words: "Here was a marine situation in which according to the libellants the 'Shaw' should not have gone on and according to the circumstances she could not stop. Even if she could have stopped, she would have done so at the risk—almost the certainty—of her tow becoming snarled with the other tow and increasing the blockade. The master saw one way out, namely, to pass the stranded 'Diggs' in the narrow space of doubtful depth between her starboard side and the northern bank. In taking the chance he is not to be charged with negligence unless he made a decision which in the circumstances nautical experience and good seamanship would condemn. The result of the decision is not the test of liability."

If the foregoing opinions governed in the case at bar, then it would seem plain that (1) no presumption of negligence follows from the mere infliction of an injury and (2) the burden of disproving guilt is not imposed on the accused by a mere showing that an accident happened. So here the master of the tug involved was a mariner of many years experience. Doubtless it will be conceded, as I am persuaded, that he was well qualified to perform the duties which the record disclosed were assigned to him. Under the rules laid down in the authorities cited, a charge of liability would not be sustained unless it appeared that he lacked or failed to exercise "a reasonable degree of skill and judgment, such as might fairly be expected of a man of his calling in the circumstances in which he was placed."

Assuming the ultimate test to be as prescribed by cases which have been approved by our Circuit Court of Appeals, the crux of the controversy with respect to an accusation of negligence is upon whom rests the burden of proof. On the one hand, upon that issue the libellant argues that when the barge Wollaston stranded while in tow of the tug Bermuda, there is a presumption that the result was the fault of the tug and her owner can exempt himself from blame only by affirmatively establishing freedom from negligence. Among the cases relied on for support of this proposition are The Nat Sutton, 2 Cir., 62 F.2d 787, 789, first part of paragraph in left hand column, and The Scipio, D.C.E.D. N.Y., 1938 A.M.C. 1207, 1210. See also The Reichert Line, 2 Cir., 64 F.2d 13, 14. On the other hand, the fundamental basis for the contention of the claimant to the contrary is Stevens v. The White City, 285 U.S. 195, 202, 203, 204, 52 S.Ct. 347, 76 L.Ed. 699.

Discussion of the divergent theories just referred to has been extensive; but I do not think it would be profitable to indulge in it further. A District Judge owes obedience to the holdings of the Circuit Court of Appeals for the circuit in which is located the District Court in which he sits. Applying that principle, for me the question has been settled by B. Turecamo Towing Corporation v. United States, 2 Cir., 125 F.2d 1001, 1002. There in definite terms it was said that "Under the ordinary towing contract like that between these parties [the petitioner and the respondent] the liability of the petitioner is

not that of a bailee and recovery for such loss as alleged in the counterclaim must be upon the allegation and proof of negligence." This holding rests on Stevens v. The White City, supra. It is also supported by The G. A. Stillwell, D.C.E.D. N.Y., 46 F.Supp. 770, 771, fifth paragraph of the right hand column.

Furthermore, that there was no bailment of the Wollaston seems to be established by the cases cited in The White City, 2 Cir., 48 F.2d 557, last paragraph of right hand column and 559 last paragraph of left hand column, affirmed in Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699. See also The Edward W. Parkhill, D.C.E.D.N.Y., 53 F.2d 87, 88, third full paragraph of left hand column; but read also The Joseph J. Hock, 2 Cir., 70 F.2d 259, 260, first full paragraph of left hand column.

■■■ Lastly, I believe that, in and of itself and standing alone, the extract quoted from the Turecamo case is adequate to sustain the view that the burden of establishing negligence in the case at bar rests entirely on the shoulders of the libellant. Nevertheless, the ruling in The Thomas Wilson, D.C.N.D.N.Y., 124 F. 649, made as long ago as 1903, should not be overlooked. There, dealing with facts which in essence are indistinguishable, the court said (124 F. at pages 653, 654): "There is no presumption that the tug was negligent. Her negligence must be proved as a fact, and the proof must be such as to warrant the inference, at least, that such negligence caused, or at least contributed to, the injury and damage. * * * Negligence which did not cause or contribute to the injury is of no account in this case. When a tow is in charge of her own officers and crew, as in this case [and as in the instant case], the tug has the right to demand and expect the exercise by them of ordinary care and skill. * * * The tow must follow the course of the tug, and conform to her movements."

I shall take it, therefore, that, in order for the libellant to prevail, it will be necessary for it to show that the damages it suffered were the consequence of the tug's negligence. I shall not go into the details of what has been proved with respect to that issue, for the reason that the same must be covered by the findings; and repetition is useless.

Other features of the evidence have significance of varying merits and should be pointed out: (1) A good deal of the testimony turned out to be irrelevant or was never connected. It would be wasteful to comment on it. (2) Estimates of numerous items of time and distance, difficult to measure with accuracy, may be taken into account from some angles. All have been considered, but discussion of them (which if indulged in would unavoidably be lengthy) is not deemed worthwhile. (3) The obligation to examine into and to weigh the relative credibility of witnesses has not been overlooked. (4) It seems to me manifest that some aspects of the testimony contribute nothing toward reaching a just result. Nevertheless, in framing the findings I have endeavored to review every part of the evidence that is pertinent.